**UNITED STATES of America, Plaintiff,**

v.

**George Royal STOUT, and Deborah Lynn Sorgani, Defendants.**

No. CR–86–0269–MHP.

United States District Court, N.D. California.

July 16, 1986.

Joseph P. Russoniello, U.S. Atty., Robert D. Ward, Chief, Criminal Div., Sandra L.

Teters, Sp. Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

William Everett Glass, Nancy Ann Kramer (George Royal Stout), Martinez, Cal., Paul B. Meltzer, Lisa M. Martin (Deborah Lynn Sorgani), Santa Cruz, Cal., for defendants.

## OPINION

PATEL, District Judge.

This matter came before the court on defendants' motion for the suppression of evidence seized pursuant to a search warrant. The court had previously determined that probable cause to issue the warrant was lacking and that defendants had made a sufficient showing to justify a hearing under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), based on certain facts apparently known to the affiant officer but omitted from his affidavit. The court also indicated that it would take testimony at the same time regarding whether the "good faith" exception of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) applied in this case.

A hearing was held on June 26, 1986. What began as a rather straightforward inquiry into the information known to the officer at the time of his affidavit, all too quickly became a lesson in the art of obfuscation, evasion and, in the end, outright deception. It soon became clear that the officer not only had omitted material information from his affidavit but had, in fact, made affirmative and material misrepresentations both in the affidavit he presented to the magistrate and in his testimony before this court.

Based on the record before it and, in particular, the testimony elicited at the hearing, the court concludes that the "good faith" exception of *Leon* does not apply and that the evidence seized pursuant to the warrant must be suppressed.

## THE AFFIDAVIT

The affidavit and accompanying reports submitted in support of the warrant application revealed the following.

On April 8, 1985 a car driven by William Bedell was stopped by Concord Police Officer Bert Byers. Jenny Singleton was a passenger in the car. Following a warrant check and sobriety tests, Bedell was placed under arrest for driving under the influence and driving with a suspended license. During a search of the car, Officer Byers discovered a pistol under the front passenger seat. When Singleton claimed the gun was hers, she was placed under arrest for having a concealed weapon. During a pat search, a clear plastic baggie containing 42 paper bindles was found in Singleton's boot. It was later determined that the bindles contained cocaine. A similar bindle was later found in Bedell's coat. Singleton was booked for possession of cocaine for sale and Bedell was booked for possession of cocaine, in addition to the violations which prompted their initial arrests.

The affiant, Concord Police Officer Gary Norvell, received a copy of the arrest report on April 8, 1985 and began an investigation, in his words, "intent on preparing a search warrant for Singleton's residence to obtain additional evidence to support Possession for Sales charges." Affidavit in Support of Search Warrant at 2. The arrest report had listed Singleton's address as 1233 Arreba Street, Martinez. This was the same address listed in the most recent county and Department of Motor Vehicle records. However, when Norvell telephoned the utility company, he was told that Singleton had moved from that address almost a year before.

Norvell went to the Arreba Street residence and was told by an unidentified female adult that "Jenny" was currently living with Royal Stout, but that she did not know their address. A review of local records uncovered two addresses for a George Royal Stout in Martinez. However, the utility company did not list Stout as the customer at either residence.

The record does not disclose any further investigation on the case until Norvell received a phone call on May 5, 1985 from Drug Enforcement Agent Stephen Tse,

who called to inquire whether Norvell had any information on George Stout. Norvell told Tse about his recent unsuccessful attempts to locate Singleton and Stout. According to Norvell's affidavit, Agent Tse then told him the following:[1] Tse had met with a confidential informant several days earlier who had told him that Stout and Singleton, also known as Jenny Morris,[2] were residing together in Martinez at 2530 Leslie Avenue; the informant told Tse that Stout and Singleton were involved in a large scale methamphetamine and cocaine distribution network throughout the county and that he had "recently" seen these drugs inside the Leslie Avenue residence. Norvell made no attempt to contact or interview Green. Criminal history checks on Green and Singleton revealed no prior Health and Safety Code violations. A similar check on Stout uncovered numerous such violations.

On May 13, 1985 Detective Gamble conducted a surveillance of the Leslie Avenue residence for approximately three hours. Singleton was not observed at the residence although Gamble recognized George Stout there and overheard people talking about "Jenny." A number of automobiles were parked in front of the residence; one of them was registered to a Deborah Stout.

The following afternoon, Norvell drove past the Leslie Avenue residence and saw two women enter the residence without knocking. He recognized one of the women as Singleton, based on her booking photo.

Based on the foregoing information, on May 21, 1985 Norvell applied for a warrant to search the Leslie Avenue residence and the person of Singleton for cocaine, drug paraphernalia, and documents associated with the sale of cocaine.[3] The warrant was issued the same day.

On May 23, 1985, officers conducted a search of the Leslie Avenue residence, finding a large quantity of methamphetamine, various drug paraphernalia and assorted documents relating to the sale and manufacture of drugs. Defendant Deborah Sorgani was on the premises and was arrested for possession for sale of a controlled substance.

During the course of the search, officers discovered documents relating to the rental of a storage locker in Sorgani's name. Further inquiry revealed three such lockers, one in Sorgani's name, one in defendant Stout's name, and one in the name of Jenny Morris. A search warrant was obtained for all three lockers and additional evidence of unlawful drug activity was found.

Based on the evidence seized during the searches of the Leslie Avenue residence and the storage lockers, defendants were indicted for conspiracy to manufacture and distribute methamphetamine (21 U.S.C. § 846); attempt to manufacture methamphetamine (21 U.S.C. § 846); and possession with the intent to distribute methamphetamine (21 U.S.C. § 841(a)(1)). In addition, defendant Stout was charged with being a felon in possession of firearms (18 U.S.C.App. 1202(1)).

PROBABLE CAUSE

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court enunciated the test to be applied by magistrates and judges in determining whether probable cause to issue a warrant exists: "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veraci-

---

**1.** As discussed in more detail below, Norvell's account of the conversation differs markedly from Agent Tse's.

**2.** The arrest report furnished to Norvell listed Jenny Morris as an AKA for Jenny Singleton.

**3.** In addition, the warrant authorized the officers "to answer any telephone calls being placed

to the premises being searched and to converse with the callers in an undercover capacity and without identifying themselves as officers." Although this particular provision of the warrant is not at issue here, the court notes that it is unaware of any evidence in the record which would justify such a highly unusual provision.

ty' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332. Although the Court abandoned the "two-pronged test" established in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), in favor of this "totality of the circumstances" approach, the Court reaffirmed that where information relevant to the probable cause determination is supplied by an informant, the "informant's 've-racity,' 'reliability,' and 'basis of knowl-edge' are all highly relevant in determining the value of his report" 462 U.S. at 230, 103 S.Ct. at 2328, and, thus, remain "relevant considerations in the totality-of-the-circum-stances analysis." *Id.* at 233, 103 S.Ct. at 2331. *See also United States v. Landis*, 726 F.2d 540, 543, *cert. denied*, 467 U.S. 1230, 104 S.Ct. 2688, 81 L.Ed.2d 882 (1984) ("[t]o credit a confidential source's informa-tion in making a probable cause determina-tion, the affidavit should support an infer-ence that the source was trustworthy and that the source's accusation of criminal ac-tivity was made on the basis of information obtained in a reliable way"). The Court in *Gates* also reaffirmed the relevance and value of independent corroboration in eval-uating an informant's tip and in applying the totality of the circumstances test. 462 U.S. at 241–246, 103 S.Ct. at 2333–2336.

In reviewing a magistrate's determina-tion of probable cause, the district court does not consider the matter *de novo*. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'sub-stantial basis for ... conclud[ing]' that probable cause existed." 462 U.S. at 238–239, 103 S.Ct. at 2332, *quoting Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). Of course, in reviewing the magistrate's determina-tion and the validity of the warrant, the

court looks only to the information con-tained in the four corners of the underlying affidavit and any reports or documents ac-companying the affidavit. *United States v. Taylor*, 716 F.2d 701, 705 (9th Cir.1983).

Although the affidavit in this case con-tains quite a bit of detailed information and numerous references to criminal activity, closer inspection reveals that little of this information is relevant to a determination of probable cause. There was virtually no reliable, trustworthy information indicating that Singleton resided at the Leslie Avenue address. The unidentified woman at the Arreba Street residence said only that "Jenny" was living with Stout; she did not know where the two resided. Further-more, the affidavit provided no basis for evaluating the reliability and credibility of this information. Although the "confiden-tial informant" stated that Singleton resid-ed at 2530 Leslie Avenue, this information was relayed to Norvell second hand and, again, there was absolutely no information in the affidavit from which the magistrate could determine the informant's "veracity, reliability or basis of knowledge."[4]

The only other information linking Sin-gleton to the Leslie Avenue residence was Norvell's "drive-by" observation of a wom-an he recognized as Singleton entering the house without knocking, and Officer Gam-ble's report that he overheard others at the house talking about "Jenny." This direct surveillance, although perhaps providing some link between Singleton and the house, hardly provides a substantial basis for con-cluding that Singleton actually resided there. Nor is it the kind of "corroboration of details of an informant's tip by indepen-dent police work," *Gates*, 462 U.S. at 241, 103 S.Ct. at 2333, which might otherwise compensate for insufficient—let alone non-existent—information regarding the infor-mant's reliability and credibility. Indeed, it appears from the face of the affidavit that what effort was made to corroborate the information through a search of govern-

---

**4.** Indeed, the affidavit fails even to make the kind of conclusory allegation of reliability and credibility which the Supreme Court has re-peatedly held to be insufficient. *See Gates*, 462 U.S. at 239, 103 S.Ct. at 2332.

ment and business records revealed only information suggesting that Singleton did not reside at the Leslie Avenue residence.[5]

Even if Norvell's affidavit provided a "substantial basis" for concluding that Singleton resided at the Leslie Avenue address, it provided almost no basis for concluding that evidence of the unlawful manufacture and sale of drugs would be found there. The only "direct" evidence came from the "confidential informant" who purportedly told Agent Tse that Stout and Singleton were involved in a large scale methamphetamine and cocaine distribution network and that he had recently seen such drugs in the Leslie Avenue residence. Again, the magistrate had absolutely no basis on which to judge the trustworthiness of this information which was wholly uncorroborated by any other source or any independent police surveillance. The affidavit contained no information regarding the informant or his reliability. Nor was there any basis on which the magistrate could determine how "recently" the drugs had been seen in the house and, hence, how likely it was that the drugs could still be found there.

The only other information linking Singleton to unlawful drug activity was the fact that she had been arrested some six weeks earlier with 42 bindles of cocaine.

As the Ninth Circuit has noted, however, it does not follow "simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence. If that were so, there would be no reason to distinguish search warrants from arrest warrants, and cases like *Chimel v. California*, 395 U.S. 752 [89 S.Ct. 2034, 23 L.Ed.2d 685] (1969), would make little sense." *United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir.1970).

Under some circumstances, the nature of the alleged crime and the circumstances surrounding it may provide a sufficient basis for searching a particular place, including the suspect's residence, even in the absence of direct evidence that the items to be seized will be found there. *See Lucarz*, 430 F.2d at 1055. However, this is not such a case. Singleton was arrested six weeks before the warrant was issued,[6] there was no evidence (other than the untested, uncorroborated, second-hand statement of the confidential informant) that Singleton was engaged in any ongoing criminal activity, she had no previous criminal record, and there was virtually no reliable information that she resided at 2530 Leslie Avenue. Under these circumstances, the mere fact that she was arrested with a large amount of cocaine cannot provide a "substantial basis for concluding" that evidence of the illegal manufacture

---

5. In her declaration submitted by defendants, Singleton claims she gave arresting officers an address in Willits as her correct current address. Norvell maintains that he was not aware of the address. The arrest and booking records do not show a Willits address. The evidence is in conflict and, in view of this court's evaluation of Norvell's testimony, it cannot be said with any assurance whether or not the Willits address was given to the officers.

The evidence linking Stout to the Leslie Street residence is equally as tenuous. The only evidence other than the statements of the unidentified woman and the "confidential informant" was the fact that Stout was seen there on one occasion, along with several other, unidentified, individuals.

6. The court agrees with defendants that there is a serious "staleness" problem with the warrant in this case. It is, of course, well established that information furnished in an application for a search warrant must be timely, and that prob-

able cause must be found to exist *at the time the warrant is issued*. *United States v. Bascaro*, 742 F.2d 1335, 1345 (11th Cir.1984), *cert. denied, Hobson v. United States*, —— U.S. ——, 105 S.Ct. 3476, 87 L.Ed.2d 613 (1985). "A warrant application based upon stale information of previous misconduct is insufficient, because it fails to create probable cause that similar or other improper conduct is continuing to occur." *Id.*

Here, the warrant was issued six weeks after the "confidential informant" allegedly reported having "recently" seen drugs in the Leslie Avenue residence. (As it turns out, the informant had seen the drugs some three or four months earlier). Although time is of less significance in cases of on-going criminal activity, *see e.g., Bascaro*, 742 F.2d at 1346, *United States v. Tehfe*, 722 F.2d 1114, 1119 (3rd Cir.1983), *cert. denied*, 466 U.S. 904, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984), the only evidence of such activity in this case was provided by the "confidential informant" whose identity, credibility and reliability were completely unknown to the magistrate.

and sale of drugs would be found at the Leslie Avenue residence.[7]

■ Considering the totality of the circumstances—including the absence of any information regarding the informants' veracity, reliability or basis of knowledge; the absence of any significant independent corroborating evidence or other indicia of reliability, *see Gates,* 462 U.S. at 233–235, 103 S.Ct. 2329–2330; the six-week hiatus between Singleton's arrest and issuance of the search warrant; and the virtual lack of any trustworthy evidence that Singleton and Stout resided in the Leslie Avenue house or were engaged in unlawful activities therein—the court concludes there was no substantial basis for the magistrate's determination that probable cause existed to search the Leslie Avenue residence.

## EVIDENTIARY HEARING

### 1. *Defendants' Request for a Franks Hearing*

At the June 20, 1985 hearing on defendants' motion to suppress, defendants requested an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In *Franks,* the Supreme Court outlined the limited circumstances under which a criminal defendant may challenge the truthfulness of factual statements made in an affidavit after the warrant has been issued. The court held that, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause," an evidentiary hearing must be held. 438 U.S. at 155–156, 98 S.Ct. at 2676. The holding in *Franks* applies to intentional and reckless omissions, as well as affirmative misrepresentations. *United States v. Stanert,* 762 F.2d 775, 781 (9th Cir.1985), amended, 769 F.2d 1410 (9th Cir. 1985).

Defendants identified a number of facts which they alleged Norvell omitted from his declaration either deliberately or with reckless disregard for the truth.[8] Although considered individually none of these omissions is so material or misleading as to require an evidentiary hearing, they take on greater significance when considered together. Given the obvious deficiencies in the affidavit, it seems quite likely that had all this information been disclosed to the magistrate he would have questioned Norvell and demanded more information from him before signing the warrant. Had he done so, Norvell's answers might well have prompted him to deny the warrant application: Under these circumstances, the court concluded that a *Franks* hearing was justified.

Technically, once the court concluded that the affidavit failed on its face to estab-

---

**7.** Again, the evidence with respect to Stout was even more tenuous. Although he had a number of prior Health and Safety Code violations, aside from the confidential informant's statement, there was absolutely nothing in the affidavit to suggest that he was currently involved in the sale and/or manufacture of controlled substances, let alone that he was engaging in such activity at the Leslie Avenue residence. Furthermore, the ostensible purpose of obtaining the warrant was to search for further evidence in support of the possession for sale charge against Singleton only.

**8.** Defendants identified the following "facts" omitted from Norvell's affidavit: (1) Singleton informed Concord Police officers on April 8, 1985 that her current residence address was 1885 Hurst Road in Willits, California; (2) during a telephone conversation on April 22, 1985 William Bedell told Norvell that the cocaine

discovered in Singleton's boot actually belonged to him; (3) attorney Glass also informed Norvell on April 22, 1985 that Bedell had told him the cocaine was Bedell's and that he had given it to Singleton to hide for him; (4) having been told that Deputy District Attorney Mimi Johnson-Jacobs had agreed to withhold filing a complaint against Singleton pending the results of a fingerprint analysis and an interview with Bedell, Norvell bypassed an appointment with Johnson-Jacobs and instead sought and obtained a complaint against Singleton through Deputy District Attorney Tom Romero; (5) Singleton's fingerprints were not found on the paper bindles taken from her boot. Items (1)–(4) were not included in the affidavit. The information in (5) was included in one of the reports appended to Norvell's affidavit. Therefore, (5) was not omitted.

lish probable cause, there was no need to conduct an evidentiary hearing under *Franks* since the purpose of such a hearing is to determine whether an affidavit which is *sufficient* on its face is nonetheless rendered invalid because of material misrepresentations. However, as discussed below, even where the affidavit is found insufficient on its face, allegations of misrepresentation are relevant to the "good faith" determination under *Leon*. In addition, in the event the court's ruling on probable cause is later challenged and reversed on appeal, Norvell's candor would become relevant under *Franks*. In light of the substantial allegations of misrepresentations and the serious deficiencies in the affidavit, the court concluded that an evidentiary hearing was warranted.[9]

### 2. Testimony at the Evidentary Hearing

An evidentiary hearing was held on June 26, 1986. The only witnesses called to testify were Norvell and Agent Tse.

### A. Norvell's Testimony

Norvell's testimony was evasive; on many of the critical areas his responses were carefully couched to avoid answering directly the questions put to him. It was apparent that he was being less than candid with the court.

Norvell testified that before his conversation with Agent Tse, he had no information to indicate that either Singleton or Stout lived in the Leslie Avenue residence, or that either of them was involved in the production of drugs. His account of the conversation with Tse essentially tracked what he said in his affidavit. After some initial hesitation, Norvell stated he was certain Tse had told him that the confidential informant had "recently" been in the Leslie Avenue residence and had seen drugs

there. When asked whether Agent Tse had told him that the informant had disassociated himself from Stout two or three months earlier, he strenuously denied it.

Norvell further testified that he never asked about, and Tse never disclosed any information concerning the confidential informant's identity or credibility. He acknowledged that a police officer has a duty to determine the credibility and reliability of an informant, but testified that he would inquire into such matters only if he were relying *wholly* on the informant's information in seeking the warrant.

Norvell acknowledged that people who have an axe to grind are generally less reliable than others as informants, and that ex-husbands fall into this category, as do people who owe money they do not want to repay. However, he denied having been told by Tse that the "confidential informant" was Charles Morris, Singleton's ex-husband. He admitted that Tse had told him the confidential informant owed Stout $900 but stated that he did not include this information in the affidavit because it might point to a specific individual and jeopardize the informant's safety.

Norvell was asked repeatedly, by both defense counsel and the court, about the statement in his affidavit that "Agent Tse does not wish to disclose the identity of the [confidential informant] because it is known from past experience that persons who give information to police officers regarding criminal activity are subject to harassment, ridicule, and/or physical injury. In addition, the future usefulness of the [confidential informant] would be jeopardize if the identity was disclosed." After considerable hedging and numerous attempts to avoid answering the questions directly, Norvell finally acknowledged that Tse had never said he did not want to disclose the identity of the informant and

9. In addition, after the court's ruling granting a hearing but before the hearing was conducted, defendants brought to the court's attention a May 2, 1985 report prepared by Agent Tse regarding his telephone conversation with Norvell. Agent Tse's report eliminated any doubts about the propriety of conducting an evidentia-

ry hearing. As discussed in more detail below, the report strongly suggests that Norvell not only omitted vital information regarding the identity and credibility of the "confidential informant," but made affirmative and highly significant misrepresentations about him regarding the informant.

that the representation in Norvell's affidavit to the contrary was simply not true. Norvell never unequivocally admitted this. After being confronted with the statement several times, he allowed that the statement in the affidavit was merely inferred from Tse's conversation. That is not what he put in the affidavit, however.

### B. *Agent Tse's Testimony*

In contrast to Norvell's equivocal testimony, Agent Tse's testimony was direct, candid and credible. His testimony painted quite a different picture than that described both in Norvell's affidavit and in his testimony. Tse testified that he was the agent on duty in the San Francisco Divisional Office on May 2, 1985 when Charles Morris came into the office and stated that he wished to volunteer information about certain unlawful drug activity. Tse stated that the report he prepared on May 2, 1985 was a generally accurate account of his conversation with Morris.

According to Tse's report, Morris told him that Stout was a methamphetamine and cocaine dealer who, along with his partner Brian Magidson, was manufacturing and selling methamphetamine. Morris told Tse that he had disassociated himself from Stout approximately two to three months earlier but that, prior to their disassociation, Morris had been selling methamphetamine and picking up laboratory equipment and chemicals for Stout. Morris also told Agent Tse that his wife, Jenny Morris (Singleton), was currently living in Stout's house at 2530 Leslie Avenue. However, Morris did not implicate Singleton in any unlawful activity. Although the report does not indicate that Morris ever told Agent Tse he had been inside the Leslie Avenue residence and seen drugs there, Tse testified that he believed Morris did tell him that he had been in the house sometime prior to his disassociation with Stout.

Tse testified that Morris never said he had "recently" been in the Leslie Avenue residence and seen drugs there, nor did Tse ever tell Norvell that Morris had said this. In fact, Agent Tse testified, he told Norvell that Morris had disassociated himself from Stout some two to three months earlier. Tse further testified that he also told Norvell that the informant was Charles Morris and that Morris had said his wife Jenny was living at the Leslie Avenue address. Although in response to a question from the Assistant United States Attorney, Tse stated that he had spoken to Norvell again after the search warrant was executed and was not sure which information he had given to Norvell in which conversation, upon further reflection and inquiry from the court, Tse stated he was certain that he told Norvell during their May 2 telephone conversation that the informant was Charles Morris and that he was Jenny Morris's husband.

In short, Agent Tse's testimony conflicted sharply with Norvell's testimony, and Norvell's affidavit, in a number of significant respects. It was clear from the demeanor of the witnesses, the nature of their testimony, and their relative motives for fabrication that Agent Tse's version, and not Norvell's, was the truthful one.

## LEON ANALYSIS

In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that evidence seized pursuant to a warrant subsequently found to be defective is nonetheless admissible as long as the executing officer's reliance on the warrant was objectively reasonable. The Court emphasized, however, that suppression remains an appropriate remedy in four situations: (1) where the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit (citing *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)); (2) where the issuing magistrate wholly abandoned his judicial role, failing to act in a neutral and detached manner (citing *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)); (3) where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell,

J., concurring)); and (4) where the affidavit is so facially deficient in identifying the place to be searched or the things to be seized that the executing officer cannot reasonably presume it to be valid (citing *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984)). 468 U.S. at 923, 104 S.Ct. at 3422.

Once the court finds a lack of probable cause, the burden shifts to the government to demonstrate that the officer's reliance on the warrant nonetheless satisfies the "good faith" exception. *United States v. Gant,* 759 F.2d 484, 487 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985). This allocation of the burden makes good sense. Where a search is conducted without a warrant, the government has the burden of establishing the existence of probable cause. Where, as here, the search is conducted pursuant to a warrant subsequently held invalid, it is as if the search had been conducted without a warrant.

■ The government has clearly failed to meet its burden of establishing "good faith" in this case. Indeed, it is self-evident from the above that this is a case in which the magistrate "in issuing [the] warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." 468 U.S. at 923, 104 S.Ct. at 3421. To put it bluntly, Norvell lied—either affirmatively or by omission—about almost every essential fact contained in his affidavit. He lied about the informant's identity and credibility: he knew that Charles Morris was the informant and that Morris was Singleton's ex-husband and owed Stout money. He

lied about how "recently" the informant had seen drugs in the house: he knew that the informant had not even been in contact with Stout for three or four months prior to the warrant application. And he lied about Singleton's alleged involvement in the manufacture and sale of drugs: he knew the informant had implicated only Stout and Magidson, not Singleton, in the "distribution network." In this context, his failure to disclose other relevant information, such as Bedell's "confession" takes on added significance.

Norvell stated in his affidavit that he began his investigation of Singleton "intent on preparing a search warrant for Singleton's residence." Why Norvell was so intent on obtaining a search warrant is unclear.[10] What is clear, however, is that he was determined to let nothing stand in his way—not the truth, not the reviewing magistrate, and not the Constitution. To allow the admission of the seized evidence under these circumstances would be to make a mockery of the rights guaranteed by the Fourth Amendment, and the concomitant responsibilities imposed on law enforcement officers. On the other hand, suppressing the evidence will fully effectuate the underlying purposes of the exclusionary rule by placing the blame and the deterrent value squarely where they belong— on the shoulders of the errant law enforcement officer. Indeed, it is precisely for this reason that the Supreme Court in *Leon* provided for the exclusion of evidence in cases such as this one.[11]

Having determined that no probable cause existed to issue the warrant and that Officer Norvell's reliance on the warrant was not objectively reasonable, the court

---

10. The amount of drugs found on Ms. Singleton was sufficient to support a possession for sale charge. Of course, Bedell's "confession" and the absence of Singleton's fingerprints might have made proof more difficult. The first of these facts was never disclosed to the magistrate; the second was buried in a report attached to the affidavit. Both facts were critical to the prosecution of Singleton and to the procuring of a warrant.

11. Because this case so clearly falls within the "false affidavit" situation described by the Court in *Leon,* the court need not decide whether any of the other three situations apply. The court notes, however, that even had Norvell's misrepresentations and omissions been less extreme or less significant, when considered in conjunction with the serious deficiencies in the affidavit, it was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 923, 104 S.Ct. at 3422.

concludes that all evidence seized from the Leslie Avenue residence, as well as that evidence which is the fruit of this illegal search—the evidence seized from the storage lockers—must be suppressed.

FRANKS ANALYSIS

■ Even if, contrary to the court's ruling, the affidavit was sufficient on its face to establish probable cause, the evidence seized in this case would have to be excluded. The Court in *Franks* held that, "[i]n the event that at [the evidentiary] hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." 438 U.S. at 156, 98 S.Ct. at 2676. Setting to one side Norvell's misrepresentations and adding the information omitted, one is left with the following: Singleton's ex-husband, who owed Stout money and had disassociated himself from Stout some two or three months earlier, voluntarily came into the Drug Enforcement Agency office and reported that Stout (not Singleton) was involved in the manufacture and sale of dangerous drugs which, several months earlier, the informant had seen in Stout's residence at 2350 Leslie Avenue where Singleton was also residing. Obviously this is insufficient to establish probable cause.

Norvell's "drive-by" observation of Singleton and Gamble's observation of Stout outside the residence can hardly overcome the deficiencies. When the omitted information regarding Singleton's Willits address and Bedell's "confession" is added, any reasonable magistrate would be forced to conclude that probable cause to search the house was lacking.

Accordingly, even if the affidavit was sufficient on its face to establish probable cause, when considered in conjunction with the information omitted or misrepresented, probable cause was clearly lacking. Thus, under either *Franks* or *Leon* the evidence seized in this case must be suppressed.

CONCLUSION

For the foregoing reasons, defendants' motion to suppress is granted.

IT IS SO ORDERED.