MASSACHUSETTS *v.* SHEPPARD

No. 82–963.   Argued January 17, 1984—Decided July 5, 1984

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACKMUN, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment, *ante*, p. 960. BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *ante*, p. 928.

*Barbara A. H. Smith*, Assistant Attorney General of Massachusetts, argued the cause for petitioner. With her on the briefs were *Francis X. Bellotti*, Attorney General, *Newman Flanagan*, and *Michael J. Traft*.

*John Reinstein* argued the cause for respondent. With him on the brief was *Nancy Gertner*.*

---

*Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Lee*, *Assistant Attorney General Trott*, *Deputy Solicitor General Frey*, *Kathryn A. Oberly*, and *Robert J. Erickson;* for the State of Arkansas et al. by *John Steven Clark*, Attorney General of Arkansas, *Wilkes C. Robinson*, and *Dan M. Peterson;* for Laws at Work et al. by *Robert F. Kane*, *George Deukmejian*, Governor of California, *John Jay Douglass*, *G. Joseph Bertain, Jr.*, *Lloyd Dunn*, *Donald E. Santarelli*,

JUSTICE WHITE delivered the opinion of the Court.

This case involves the application of the rules articulated today in *United States* v. *Leon, ante,* p. 897, to a situation in

*Robert L. Toms,* and *Harold S. Voegelin;* for the National District Attorneys Association, Inc., by *Newman A. Flanagan, Austin J. McGuigan, John M. Massameno, Edwin L. Miller, Jr., Jack E. Yelverton,* and *James P. Manak;* and for Seven Former Members of the Attorney General's Task Force on Violent Crime et al. by *David L. Crump, Frank G. Carrington, Griffin B. Bell, Wayne W. Schmidt, James P. Manak, Fred E. Inbau, Rufus L. Edmisten,* Attorney General of North Carolina, and *David S. Crump,* Deputy Attorney General.

*James J. Brosnahan* filed a brief for the Bar Association of San Francisco et al. as *amici curiae* urging affirmance.

Briefs of *amici curiae* were filed for the State of Florida et al. by *Jim Smith,* Attorney General of Florida, and *Lawrence A. Kaden* and *Raymond L. Marky,* Assistant Attorneys General, and by the Attorneys General for their respective States as follows: *Robert K. Corbin* of Arizona, *John K. Van de Kamp* of California, *Duane Woodard* of Colorado, *Austin J. McGuigan* of Connecticut, *Charles M. Oberly III* of Delaware, *Michael J. Bowers* of Georgia, *Tany S. Hong* of Hawaii, *Jim Jones* of Idaho, *Linley E. Pearson* of Indiana, *Robert T. Stephan* of Kansas, *William J. Guste, Jr.,* of Louisiana, *Frank J. Kelley* of Michigan, *Hubert H. Humphrey III* of Minnesota, *Bill Allain* of Mississippi, *Michael T. Greely* of Montana, *Brian McKay* of Nevada, *Gregory H. Smith* of New Hampshire, *Irwin I. Kimmelman* of New Jersey, *Rufus L. Edmisten* of North Carolina, *Robert O. Wefald* of North Dakota, *Anthony J. Celebrezze, Jr.,* of Ohio, *Michael C. Turpen* of Oklahoma, *LeRoy S. Zimmerman* of Pennsylvania, *Dennis J. Roberts II* of Rhode Island, *T. Travis Medlock* of South Carolina, *David L. Wilkinson* of Utah, *John J. Easton, Jr.,* of Vermont, *Gerald L. Baliles* of Virginia, *Ken Eikenberry* of Washington, *Chauncey H. Browning, Jr.,* of West Virginia, *Bronson C. La Follette* of Wisconsin, and *A. G. McClintock* of Wyoming; for the Appellate Committee of the California District Attorneys Association by *Robert H. Philibosian, Harry B. Sondheim,* and *Roderick W. Leonard;* for the Illinois State Bar Association by *Michael J. Costello, Albert Hofeld, William J. Martin,* and *Joshua Sachs;* for the Committee on Criminal Law of the Association of the Bar of the City of New York by *Peter L. Zimroth* and *Barbara D. Underwood;* for the National Association of Criminal Defense Lawyers et al. by *Marshall W. Krause, Steffan B. Imhoff,* and *Charles Scott Spear;* for the National Legal Aid and Defender Association by *Kenneth M. Mogill;* and for Dan Johnston, County Attorney, Polk County, Iowa, by *Mr. Johnston, pro se.*

which police officers seize items pursuant to a warrant subsequently invalidated because of a technical error on the part of the issuing judge.

## I

The badly burned body of Sandra Boulware was discovered in a vacant lot in the Roxbury section of Boston at approximately 5 a. m., Saturday, May 5, 1979. An autopsy revealed that Boulware had died of multiple compound skull fractures caused by blows to the head. After a brief investigation, the police decided to question one of the victim's boyfriends, Osborne Sheppard. Sheppard told the police that he had last seen the victim on Tuesday night and that he had been at a local gaming house (where card games were played) from 9 p. m. Friday until 5 a. m. Saturday. He identified several people who would be willing to substantiate the latter claim.

By interviewing the people Sheppard had said were at the gaming house on Friday night, the police learned that although Sheppard was at the gaming house that night, he had borrowed an automobile at about 3 o'clock Saturday morning in order to give two men a ride home. Even though the trip normally took only 15 minutes, Sheppard did not return with the car until nearly 5 a. m.

On Sunday morning, police officers visited the owner of the car Sheppard had borrowed. He consented to an inspection of the vehicle. Bloodstains and pieces of hair were found on the rear bumper and within the trunk compartment. In addition, the officers noticed strands of wire in the trunk similar to wire strands found on and near the body of the victim. The owner of the car told the officers that when he last used the car on Friday night, shortly before Sheppard borrowed it, he had placed articles in the trunk and had not noticed any stains on the bumper or in the trunk.

On the basis of the evidence gathered thus far in the investigation, Detective Peter O'Malley drafted an affidavit designed to support an application for an arrest warrant and a search warrant authorizing a search of Sheppard's residence.

The affidavit set forth the results of the investigation and stated that the police wished to search for

> "[a] fifth bottle of amaretto liquor, 2 nickel bags of marijuana, a woman's jacket that has been described as black-grey (charcoal) possessions of Sandra D. Boulware, similar type wire and rope that match those on the body of Sandra D. Boulware, or in the above [T]hunderbird. Blunt instrument that might have been used on the victim. Men's or women's clothing that may have blood, gasoline, burns on them. Items that may have fingerprints of the victim."[1]

Detective O'Malley showed the affidavit to the District Attorney, the District Attorney's first assistant, and a sergeant, who all concluded that it set forth probable cause for the search and the arrest. 387 Mass. 488, 492, 441 N. E. 2d 725, 727 (1982).

Because it was Sunday, the local court was closed, and the police had a difficult time finding a warrant application form. Detective O'Malley finally found a warrant form previously in use in the Dorchester District. The form was entitled "Search Warrant—Controlled Substance G. L. c. 276 §§ 1 through 3A." Realizing that some changes had to be made before the form could be used to authorize the search requested in the affidavit, Detective O'Malley deleted the subtitle "controlled substance" with a typewriter. He also substituted "Roxbury" for the printed "Dorchester" and typed Sheppard's name and address into blank spaces provided for that information. However, the reference to "controlled substance" was not deleted in the portion of the form that constituted the warrant application and that, when signed, would constitute the warrant itself.

---

[1] The liquor and marihuana were included in the request because Sheppard had told the officers that when he was last with the victim, the two had purchased two bags of marihuana and a fifth of amaretto before going to his residence.

986

Detective O'Malley then took the affidavit and the warrant form to the residence of a judge who had consented to consider the warrant application. The judge examined the affidavit and stated that he would authorize the search as requested. Detective O'Malley offered the warrant form and stated that he knew the form as presented dealt with controlled substances. He showed the judge where he had crossed out the subtitles. After unsuccessfully searching for a more suitable form, the judge informed O'Malley that he would make the necessary changes so as to provide a proper search warrant. The judge then took the form, made some changes on it, and dated and signed the warrant. However, he did not change the substantive portion of the warrant, which continued to authorize a search for controlled substances;[2] nor did he alter the form so as to incorporate the affidavit. The judge returned the affidavit and the warrant to O'Malley, informing him that the warrant was sufficient authority in form and content to carry out the search as requested.[3] O'Malley took the two documents and, accompanied by other officers, proceeded to Sheppard's residence.

---

[2] The warrant directed the officers to "search for any controlled substance, article, implement or other paraphernalia used in, for, or in connection with the unlawful possession or use of any controlled substance, and to seize and securely keep the same until final action . . . ."

[3] Sheppard contends that there is no evidence in the record that the judge spoke to O'Malley after he made the changes. Brief for Respondent 11, n. 4. However, the trial judge expressly found that the judge "informed Detective O'Malley that the warrant as delivered over was sufficient authority in form and content to carry out the search as requested," App. 27a, and a plurality of the Supreme Judicial Court noted that finding without any apparent disapproval. 387 Mass. 488, 497, 441 N. E. 2d 725, 730 (1982). Since it would have been reasonable for O'Malley to infer that the warrant was valid when the judge made some changes after assuring him that the form would be corrected, an express assurance that the warrant was adequate would add little to the reasonableness of O'Malley's belief that the necessary changes had been made. Therefore, nothing would be served by combing the record to determine whether there is sufficient evidence to support the trial court's finding that the judge spoke to O'Malley after signing the warrant.

The scope of the ensuing search was limited to the items listed in the affidavit, and several incriminating pieces of evidence were discovered.[4]  Sheppard was then charged with first-degree murder.

At a pretrial suppression hearing, the trial judge concluded that the warrant failed to conform to the commands of the Fourth Amendment because it did not particularly describe the items to be seized.  The judge ruled, however, that the evidence could be admitted notwithstanding the defect in the warrant because the police had acted in good faith in executing what they reasonably thought was a valid warrant. App. 35a.  At the subsequent trial, Sheppard was convicted.

On appeal, Sheppard argued that the evidence obtained pursuant to the defective warrant should have been suppressed.  The Supreme Judicial Court of Massachusetts agreed.  A plurality of the justices concluded that although "the police conducted the search in a good faith belief, reasonably held, that the search was lawful and authorized by the warrant issued by the judge," 387 Mass., at 503, 441 N. E. 2d, at 733, the evidence had to be excluded because this Court had not recognized a good-faith exception to the exclusionary rule.  Two justices combined in a separate concurrence to stress their rejection of the good-faith exception, and one justice dissented, contending that since exclusion of the evidence in this case would not serve to deter any police misconduct, the evidence should be admitted.  We granted certiorari and set the case for argument in conjunction with *United States* v. *Leon, ante,* p. 897.  463 U. S. 1205 (1983).

## II

Having already decided that the exclusionary rule should not be applied when the officer conducting the search acted in

---

[4] The police found a pair of bloodstained boots, bloodstains on the concrete floor, a woman's earring with bloodstains on it, a bloodstained envelope, a pair of men's jockey shorts and women's leotards with blood on them, three types of wire, and a woman's hairpiece, subsequently identified as the victim's.

objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid, *ante*, at 922–923, the sole issue before us in this case is whether the officers reasonably believed that the search they conducted was authorized by a valid warrant.[5] There is no dispute that the officers believed that the warrant authorized the search that they conducted. Thus, the only question is whether there was an objectively reasonable basis for the officers' mistaken belief. Both the trial court, App. 35a, and a majority of the Supreme Judicial Court, 387 Mass., at 503, 441 N. E. 2d, at 733; *id.*, at 524–525, 441 N. E. 2d, at 745 (Lynch, J., dissenting), concluded that there was. We agree.

-----

[5] Both the trial court, App. 32a, and a majority of the Supreme Judicial Court, 387 Mass., at 500–501, 441 N. E. 2d, at 731–732; *id.*, at 510, 441 N. E. 2d, at 737 (Liacos, J., joined by Abrams, J., concurring), concluded that the warrant was constitutionally defective because the description in the warrant was completely inaccurate and the warrant did not incorporate the description contained in the affidavit. Petitioner does not dispute this conclusion.

Petitioner does argue, however, that even though the warrant was invalid, the search was constitutional because it was reasonable within the meaning of the Fourth Amendment. Brief for Petitioner 28–32. The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional. *Stanford* v. *Texas*, 379 U. S. 476 (1965); *United States* v. *Cardwell*, 680 F. 2d 75, 77–78 (CA9 1982); *United States* v. *Crozier*, 674 F. 2d 1293, 1299 (CA9 1982); *United States* v. *Klein*, 565 F. 2d 183, 185 (CA1 1977); *United States* v. *Gardner*, 537 F. 2d 861, 862 (CA6 1976); *United States* v. *Marti*, 421 F. 2d 1263, 1268–1269 (CA2 1970). That rule is in keeping with the well-established principle that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara* v. *Municipal Court*, 387 U. S. 523, 528–529 (1967). See *Steagald* v. *United States*, 451 U. S. 204, 211–212 (1981); *Jones* v. *United States*, 357 U. S. 493, 499 (1958). Whether the present case fits into one of those carefully defined classes is a fact-bound issue of little importance since similar situations are unlikely to arise with any regularity.

The officers in this case took every step that could reasonably be expected of them. Detective O'Malley prepared an affidavit which was reviewed and approved by the District Attorney. He presented that affidavit to a neutral judge. The judge concluded that the affidavit established probable cause to search Sheppard's residence, App. 26a, and informed O'Malley that he would authorize the search as requested. O'Malley then produced the warrant form and informed the judge that it might need to be changed. He was told by the judge that the necessary changes would be made. He then observed the judge make some changes and received the warrant and the affidavit. At this point, a reasonable police officer would have concluded, as O'Malley did, that the warrant authorized a search for the materials outlined in the affidavit.

Sheppard contends that since O'Malley knew the warrant form was defective, he should have examined it to make sure that the necessary changes had been made. However, that argument is based on the premise that O'Malley had a duty to disregard the judge's assurances that the requested search would be authorized and the necessary changes would be made. Whatever an officer may be required to do when he executes a warrant without knowing beforehand what items are to be seized,[6] we refuse to rule that an officer is required

---

[6] Normally, when an officer who has not been involved in the application stage receives a warrant, he will read it in order to determine the object of the search. In this case, Detective O'Malley, the officer who directed the search, knew what items were listed in the affidavit presented to the judge, and he had good reason to believe that the warrant authorized the seizure of those items. Whether an officer who is less familiar with the warrant application or who has unalleviated concerns about the proper scope of the search would be justified in failing to notice a defect like the one in the warrant in this case is an issue we need not decide. We hold only that it was not unreasonable for the police in this case to rely on the judge's assurances that the warrant authorized the search they had requested.

to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested. In Massachusetts, as in most jurisdictions, the determinations of a judge acting within his jurisdiction, even if erroneous, are valid and binding until they are set aside under some recognized procedure. *Streeter* v. *City of Worcester*, 336 Mass. 469, 472, 146 N. E. 2d 514, 517 (1957); *Moll* v. *Township of Wakefield*, 274 Mass. 505, 507, 175 N. E. 81, 82 (1931). If an officer is required to accept at face value the judge's conclusion that a warrant form is invalid, there is little reason why he should be expected to disregard assurances that everything is all right, especially when he has alerted the judge to the potential problems.

In sum, the police conduct in this case clearly was objectively reasonable and largely error-free. An error of constitutional dimensions may have been committed with respect to the issuance of the warrant, but it was the judge, not the police officers, who made the critical mistake. "[T]he exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Illinois* v. *Gates*, 462 U. S. 213, 263 (1983) (WHITE, J., concurring in judgment).[7] Suppressing evidence because the

---

[7] This is not an instance in which "it is plainly evident that a magistrate or judge had no business issuing a warrant." *Illinois* v. *Gates*, 462 U. S., at 264 (WHITE, J., concurring in judgment). The judge's error was not in concluding that a warrant should issue but in failing to make the necessary changes on the form. Indeed, Sheppard admits that if the judge had crossed out the reference to controlled substances, written "see attached affidavit" on the form, and attached the affidavit to the warrant, the warrant would have been valid. Tr. of Oral Arg. 27, 50. See *United States* v. *Johnson*, 690 F. 2d 60, 64–65 (CA3 1982), cert. denied, 459 U. S. 1214 (1983); *In re Property Belonging to Talk of the Town Bookstore, Inc.*, 644 F. 2d 1317, 1318–1319 (CA9 1981); *United States* v. *Johnson*, 541 F. 2d 1311, 1315–1316 (CA8 1976); *United States* v. *Womack*, 166 U. S. App. D. C. 35, 49, 509 F. 2d 368, 382 (1974); *Commonwealth* v. *Todisco*, 363 Mass. 445, 450, 294 N. E. 2d 860, 864 (1973).

judge failed to make all the necessary clerical corrections despite his assurances that such changes would be made will not serve the deterrent function that the exclusionary rule was designed to achieve. Accordingly, federal law does not require the exclusion of the disputed evidence in this case. The judgment of the Supreme Judicial Court is therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

[For opinion of JUSTICE STEVENS concurring in the judgment, see *ante,* p. 960.]

[For dissenting opinion of JUSTICE BRENNAN, see *ante,* p. 928.]