BOWEN, Presiding Judge.
Kelvin Spivey was indicted for possession of cocaine. He filed a pre-trial motion to suppress the cocaine, alleging that it was seized during a search based upon a defective warrant. After an evidentiary hearing, the trial court granted the motion to suppress. The State appeals from that order pursuant to Rule 15.7, A.R.Crim.P.
On the afternoon of February 20, 1991, a district court judge in Jefferson County issued a search warrant for “Kelvin Spivey, 601 Dublin Avenue South, Birmingham, Jefferson County, Alabama.” C.R. 83 (emphasis added). The affidavit in support of this warrant was executed by Jefferson County Deputy Sheriff Tony Richardson and states, in pertinent part:
“On this date, February 20, 1991, I talked with a confidential, reliable informant who stated to me that within the past 48 hours, informant had been present at 601 Dublin Avenue, South, Birmingham, Jefferson County, Alabama, which is the residence of Kelvin Spivey, and that while present in this residence in this 48-hour period, informant observed a quantity of cocaine....
*1337 [[Image here]]
“Independent investigation reveals that 601 Dublin Avenue South, Birmingham, Jefferson County, is in fact the residence of Kelvin Spivey." C.R. 80 (emphasis added).
It is undisputed that the search warrant was actually executed at a residence located at 607 Dublin Avenue and that 601 Dublin Avenue is two houses away from 607. Kelvin Spivey, the defendant, was present at 607 Dublin Avenue at the time the warrant was executed. Cocaine was found in the residence and drugs were found on the person of another individual present at the residence, but no drugs were found on Spivey’s person.
Deputy Richardson was the only witness to testify at the suppression hearing. He stated that prior to February 20, 1991, a confidential informant had “pointed out” the residence that was searched (607 Dublin Avenue) on “[s]everal occasions.” R. 8. On February 20, this informant told Richardson that there was cocaine at 601 Dublin Avenue. According to Richardson, this address was the only description given to him by the informant that day. Richardson stated that he drove by the house that had been previously pointed out by the informant to confirm its street number and that the number appeared to him to be 601. According to Richardson,
“This particular home had a mailbox that was up on the porch ... and it was a small mailbox, a black mailbox in color. The address on that mailbox was written] on the mailbox with some kind of chalk, paint, whatever. The ‘7’ that is actually on that mailbox is not a distinctive ‘7.’ It was a number that could have been mistaken for a ‘1’ even if you were on the porch and you were not really paying attention to it. And like I said, from the street, riding by, it definitely looked like a ‘1.’ ”
R. 38.
Richardson stated that he saw the defendant come out of the residence that was searched (607 Dublin Avenue) at the time he drove by to verify the address, which was two to three hours before the warrant was issued. He could not recall if he had seen the defendant at that residence on any prior occasion. Richardson acknowledged that before he “executed the warrant” he had “checked ... [the] registration of an auto and driver’s license, and both those reflect[ed] 601 for Mr. Spivey.” R. 26 (emphasis added).
Richardson testified that when he was informed that the residence being searched was actually 607 Dublin Avenue, he ordered the officers conducting the search to cease their activities while he went to his vehicle and telephoned the district judge who had issued the search warrant. Richardson stated that he gave the district judge the following information:
“I told him that the address on the warrant was different than the address on the house, but that the person that I was looking for was at that home, and I was at the right house, or the one I wanted to search.”
R. 14 (emphasis added). When asked if he told the judge “that there was, in fact, a 601,” Richardson replied, “I believe I did.” R. 15 (emphasis added). Richardson summarized the judge’s questions to him as follows:
“He asked me was the person that was listed on the search warrant there. I told him yes. He asked me was I at the residence that I intended to search, and I told him yes. And at some point, thereafter, he said search.”
R. 16 (emphasis added). After obtaining this telephone approval from the district judge, Richardson had the officers complete the search of 607 Dublin Avenue.
The Fourth Amendment requires that search warrants “particularly describ[e] the place to be searched.” While accuracy in this description is clearly very important,
“ ‘[a]n erroneous description of premises to be searched does not necessarily render a warrant invalid.’ United States v. Burke, 784 F.2d 1090, 1092 (11th Cir.), cert. denied, 476 U.S. 1174, 106 S.Ct. 2901, 90 L.Ed.2d 987 (1986) (search warrant stated address of premises to be searched as 38 Throop Street, apartment 840, when actual address of premises searched was 48 Troup Street, apartment 840). ‘[T]he “test for determining the sufficiency of the warrant description is ‘whether the place *1338 to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.’ ” ’ United States v. Turner, 770 F.2d 1508, 1510 (9th Cir.1985), cert. denied, 475 U.S. 1026, 106 S.Ct. 1224, 89 L.Ed.2d 334 (1986). Accord, Lyons v. Robinson, 783 F.2d 737, 738 (8th Cir.1985).”
Grantham v. State, 580 So.2d 53, 54-55 (Ala. Cr.App.1991).
In Grantham, the search warrant authorized the search of the defendant and “her ‘residence located at #59 Lakeside Trailer Park.’” 580 So.2d at 54. However, “[t]he trailer which was searched, and in which Grantham actually resided, was located on lot #55.” Id. The officers who obtained and executed the warrant were told by a reliable informant that Grantham “had a large amount of marijuana in her trailer” and were given a physical description of both Grant-ham and her trailer. Id. The officers then took the informant to the trailer park where he “pointed out to the officers the trailer in which he had seen the marijuana.” Id. At that time, the officers obtained the erroneous lot number “from a sign on the chain link fence located near the trailer.” Id.
We concluded that because “two of the officers executing the search warrant had previously viewed the trailer in the company of the informant ... there [wa]s clearly no doubt that the trailer actually searched was the trailer intended to be searched.” Id. at 55. However, it is clear that it was not merely the fact that the officers had viewed the trailer in the company of the informant that was dispositive in Grantham. Rather, it was the fact that the officers viewed the trailer in the company of the informant at the time the informant provided the probable cause for the search. This fact reasonably ensured that the residence searched was the residence for which there was probable cause to search, despite the erroneous address in the search warrant.
Our reference in Grantham to the “[premises] intended to be searched” does not stand alone; this language appears in numerous other cases. See, e.g., Maryland v. Garrison, 480 U.S. 79, 88, 107 S.Ct. 1013, 1019, 94 L.Ed.2d 72 (1987); United States v. Gahagan, 865 F.2d 1490, 1498 (6th Cir.), cert. denied, 492 U.S. 918, 109 S.Ct. 3242, 106 L.Ed.2d 590 (1989); National City Trading Corp. v. United States, 635 F.2d 1020, 1024 (2d Cir.1980). It is clear, however, that that phrase is actually a term of art meaning the “premises for which there is probable cause to search” — it does not refer to the subjective intent of the searching officer.[1] Thus, our conclusion in Grantham that “there [wa]s clearly no doubt that the trailer actually searched was the trailer intended to be searched,” can be read as there was clearly no doubt that the trailer actually searched was the trailer for which there was probable cause to search. See also State v. Graham, 571 So.2d 1267, 1268-69 (Ala.Cr.App.), cert. quashed, 571 So.2d 1269 (Ala.1990).
In granting the defendant’s motion to suppress in this case, the trial court stated:
“[W]hat bothers me is that on the warrant itself, it is not readily apparent which house was intended to be searched, in that there is a 601 Dublin Avenue. The defendant’s driver’s license, tag, and other documents that were registered to him are at 601 Dublin Avenue, South. The detective testified that the informant, in fact, said that he observed the narcotics at 601 Dublin Avenue, South.... Constitutionally, the warrants have to specifically describe the place to be searched. And, notwith *1339 standing the good faith of the officer,[2] I think on the face of this warrant, in view of the fact that there is a 601, that it’s not readily apparent which residence is to be searched.”
R. 41-42 (emphasis and footnote added). In using the phrase “house intended to be searched,” the trial court obviously meant, as we did in Grantham, the “house for which there was probable cause to search.” We agree with the trial court that it is not clear from the face of the warrant which house there was probable cause to search; consequently, the warrant was invalid. However, we find that Deputy Roberts acted in good faith on the district court’s telephone approval to complete the search of 607 Dublin Avenue and that the evidence seized as a result of that search was improperly suppressed. See United States v. Leon, 468 U.S. 897, 920, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677 (1984) (the exclusionary rule should not be applied “when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and [has] acted within its scope,” even if the warrant is subsequently found to be invalid); Massachusetts v. Sheppard, 468 U.S. 981, 987-88, 104 S.Ct. 3424, 3427, 82 L.Ed.2d 737 (1984) (“the exclusionary rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid”).
The following facts are fairly established by Deputy Richardson’s testimony: Deputy Richardson was shown a particular residence by an informant utilized by Richardson to make drug cases; this informant subsequently told Richardson that he had seen drugs at a particular address; Richardson went to the residence previously shown to him by the informant in order to verify its address; the address on that residence appeared to Richardson to be the same address as the address given to him by the informant; and when Richardson became aware of the problem with the addresses, he halted the search, telephoned the district judge, apprised the judge of the situation, and sought the judge’s guidance. While Richardson stated that he told the district judge that he was at the residence he “wanted to search,” he also testified that the district judge asked him if he was at the residence he “intended to search.”
While Richardson’s subjective intent or desire to search 607 Dublin Avenue is irrelevant, it appears that the district court, by its use of the phrase “intended to search,” was attempting to ascertain whether probable cause existed to search 607 Dublin Avenue. Although this Court questions whether the district court actually obtained enough information to make an accurate decision on this matter, the fact remains that the search was resumed only after authorization to do so was obtained from the district judge. Like the United States Supreme Court, “we refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested.” Massachusetts v. Sheppard, 468 U.S. at 989-90, 104 S.Ct. at 3428. While the warrant in this case, like the warrant in Sheppard, was actually defective, in view of the district judge’s telephone approval of the search, we think that Richardson “reasonably believed that the search [he] conducted was authorized by a valid warrant.” Sheppard, 468 U.S. at 988, 104 S.Ct. at 3427. See United States v. Arenal, 768 F.2d 263, 267 (8th Cir.1985). Consequently, the search of 607 Dublin Avenue was valid.
The circuit court’s judgment granting the defendant’s motion to suppress is reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.

. Probable cause, of course, is measured by an objective standard, rather than a subjective one— it exists only when " 'the facts and circumstances within the officers’ knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that certain items are the fruits, instrumentalities, or evidence of crime and that these items are presently to be found in a certain place.” United States v. Acklen, 690 F.2d 70, 72 (6th Cir. 1982) (quoting Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed. 1879 (1949)) (emphasis added). Accord New Jersey v. T.L.O., 469 U.S. 325, 358, 105 S.Ct. 733, 751-52, 83 L.Ed.2d 720 (1985) (Brennan, J., concurring in part and dissenting in part); Sheridan v. State, 591 So.2d 129, 130 (Ala.Cr.App.1991).

. The trial court specifically found that Deputy Richardson "operated from the beginning, all the way up to when that warrant was concluded, and including checking with [the district judge] ... in good faith.” R. 40.