UNITED STATES of America

v.

**Dennis C. HICKEY, Maria Hickey, Joseph Carione, Angelo Carione, Andrew Russo, Dennis E. Hickey, Hickey's Carting, Inc., Grand East, Inc., Competition Carting, Inc., Grand Carting, Inc., and William Grainger, Defendants.**

No. 96–CR–693 (DRH).

United States District Court,
E.D. New York.

Nov. 25, 1998.

Zachary W. Carter, United States Attorney, Garden City, NY, by Paul Weinstein, A.U.S.A., Robert LaRusso, A.U.S.A., for the Government.

LaRossa, Mitchell & Ross, New York City, by James M. LaRossa, for defendant Dennis C. Hickey.

Clayman & Rosenberg, New York City, by Brian D. Linder, for defendant Maria Hickey.

Deborah A. Schwartz, New York City, for defendant Dennis E. Hickey, Jr.

David N. Horowitz, Bay Shore, NY, Salvatore J. Marinello, P.C., Mineola, NY, for defendant Grand Carting, Inc.

Domenick J. Porco, Scarsdale, NY, David N. Horowitz, Bay Shore, NY, for defendant Angelo Carione.

Salvatore J. Marinello, P.C., Mineola, NY, for defendant Joseph Carione.

Santangelo, Santangelo and Cohen, New York City, by George L. Santangelo, Alan S. Futerfas, New York City, for defendant Andrew Russo.

Andrew J. Weinstein, New York City, William Weber, Hauppauge, NY, for defendant Hickey's Carting, Inc., Competition Carting, Inc. and Grand East, Inc.

Richard H. Rosenberg, New York City, for defendant William Grainger.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

### INTRODUCTION

By decision dated August 18, 1998, this Court granted defendants' omnibus motion to the extent that the items seized, pursuant to search warrants executed at Hickey's Carting, Grand Carting, 141 North Path Road, 70 Crane Neck Road, and Rite–Way Auto, Inc., were ordered suppressed.

The government moved for reconsideration, claiming that the August 18th decision was flawed in that the Court:

1. rejected the applicability of the "all records" exception to the challenged search warrants;

2. concluded that the executing officers had nothing beyond the search warrants themselves to guide, and circumscribe, the nature of the items subject to seizure;

3. placed excessive reliance on *United States v. George,* 975 F.2d 72 (2d Cir.1992) in determining whether the particularity requirements of the Fourth Amendment were satisfied and failed to consider such later cases as *United States v. Bianco,* 998 F.2d 1112, 1116–17 (2d Cir.1993);

4. rejected severance as a mechanism to separate the proper from the improper portions of the warrants, and to only suppress the latter; and

5. concluded that the good faith exception to the exclusionary rule, as articulated

in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), was inapplicable.

The government's motion was granted to the extent[1] that a hearing was scheduled "to determine what information—by way of documents or otherwise—was possessed by the officers who executed the search warrants, and what effect, if any, such evidence should have on the Court's conclusion of August 18, 1998 that the search warrants suffered from overbreadth, and were neither subject to severance nor salvageable under the *Leon* good faith exception." (*See* Sept. 10, 1998 Mem. and Order.)

For the reasons hereinafter detailed, the Court finds that the suppression portion of its August 18, 1998 order was predicated on (1) an erroneous conclusion of fact regarding the nature and extent of the information possessed by the executing officers at the time searches were made, and (2) an erroneous conclusion of law, *viz.*, the inapplicability of the *Leon* good faith exception. Accordingly, and upon reconsideration, defendants' motion to suppress is denied.

## *FINDINGS OF FACT*

In the Court's initial decision, it is stated that:

> no copy of the McCormick affidavit or Indictment was attached to the warrants to provide context to what the officers had been called upon to do ..., nor was any reference made to the allegedly violated statutory sections to provide some type of parameters for the searches.... Instead, the officers were simply furnished with warrants that directed the seizure of "all business records" of the four corporations, absent any explicit or implicit reference points (citations omitted).

(*See* Aug. 18, 1998 Mem. and Order at 37–38.)

That finding of fact was off target to the extent it signified that the officers conducted their searches solely on the information set forth within the four corners of the respective warrants. Although that conclusion was not at odds with the sparse original proffer made by the government, it is clearly contrary to the facts as later developed during the course of the hearing.

The executing officers were not simply provided with search warrants and sent to the designated search sites; rather, that was the culmination of a process that started weeks before. By way of organization, Special Agent Charles Rosaschi was assigned to assist case agent Donald McCormick ("McCormick"), and to serve both as the overall coordinator for the six searches to be conducted and as the team leader for one of the searches. In his role as coordinator, he prepared an Operations Order (Gov't's Hr'g Ex. S–1), which detailed, *inter alia*, the crimes alleged in the indictment, as well as the synergistic relationship between the defendants and organized crime in committing the charged wrongdoing.

All team leaders received copies of the Operations Order, the indictment, and the draft affidavit of McCormick—which essentially mirrored his final affidavit—considerably in advance of this search date. Two major briefing sessions were conducted, along with several informal meetings, to educate the team leaders and prospective searching personnel of the basis underlying the warrants.

In sum, the Court's initial conclusion that the information possessed by the executing officers was limited to what was set forth on the face of the search warrants was erroneous.

## *CONCLUSIONS OF LAW*

The government steadfastly maintains that the challenged warrants comply with

---

1. The other ground advanced for reconsideration, the "all records" exception, was found to be without merit on the papers submitted. (*See* Sept. 10, 1998 Mem. and Order at 2.)

the particularity requirement of the Fourth Amendment, and argues that the Court's conclusion to the contrary rests on a faulty belief as to the viability of the holding in *United States v. George,* 975 F.2d 72, 76 (2d Cir.1992) ("Resort to an affidavit to remedy a warrant's lack of particularity is only available when it is incorporated by reference in the warrant itself and attached to it."), rather than the subsequent Second Circuit decisions in *United States v. Bianco,* 998 F.2d 1112, 1116–17 (2d Cir.1993) and *United States v. Moetamedi,* 46 F.3d 225, 229 (2d Cir.1995). Those cases hold—curiously absent any reference to *George*—that, under appropriate circumstances, a non-attached, non-incorporated affidavit may be considered in determining whether a warrant suffers from overbreadth.

In *Bianco,* the Second Circuit considered the information in a non-attached affidavit in determining the reasonableness of the search. It started its analysis with the observation that the warrant was facially overbroad. But that infirmity was found to be rectified via information in the affidavit which served to limit the activities of the executing officers. As the case was decided on that ground, the alternate ground raised by the government, to wit, good faith under *Leon,* was not addressed.

Here, the Court will take a different tack. As explained below, the hearing record establishes that the executing officers acted in good faith. For that reason, the issue of the warrants' overbreadth need not, and will not be revisited. *See United States v. Jasorka,* 153 F.3d 58 (2d Cir. 1998); *United States v. Cancelmo,* 64 F.3d 804, 807 (2d Cir.1995) ("Although we recognize that the question of whether probable cause existed in the instant case is a close one, we need not resolve the issue because we conclude that the good faith exception applies.").

Granted, both *Jasorka* and *Cancelmo* entailed challenges to the presence of probable cause, which challenges were circumvented via reliance on the good faith exception. The issue is different here, being one of overbreadth. The question then arises whether that distinction is meaningful under *Leon.*

In *Leon,* the Supreme Court held that—subject to certain exceptions—the exclusionary rule should not be applied to evidence obtained by officers acting in reasonable reliance on a search warrant which is ultimately determined to be defective. The basis for the good faith exception is that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon,* 468 U.S. at 916, 104 S.Ct. 3405. From that it follows that "[p]enalizing the officer for the magistrate's error [*i.e.,* signing a defective warrant], rather than his own, cannot logically contribute to he deterrence of Fourth Amendment violations." *Id.* at 921, 104 S.Ct. 3405. As a result, under such circumstances, suppression is not warranted.

But, *Leon* involved "a facially valid search warrant." *Id.* at 902, 104 S.Ct. 3405. In contrast, the subject warrants have been found to be facially invalid. Moreover, *Leon* instructs in dictum that "depending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923, 104 S.Ct. 3405. Does that mean that other documents—such as the affidavit and indictment presented to the magistrate judge, as well as to searching personnel, in the present case—are necessarily irrelevant to a good faith inquiry? Are the preparations for, and other circumstances related to execution of the warrants similarly without significance? Must the analysis be confined solely to the face of the warrants?

The operative phrase from *Leon* is "depending on the circumstances." In an appropriate case, such circumstances will dictate a finding that a facially defective

warrant is exempted from the exclusionary rule given the objectively reasonable reliance of the executing officers on a warrant signed by a neutral magistrate. Indeed, in *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), decided the same day as *Leon,* the Supreme Court reached such a conclusion. *See also United States v. Buck,* 813 F.2d 588 (2d Cir.1987); *United States v. Burke,* 718 F.Supp. 1130, 1144–46 (S.D.N.Y.1989).

In *Sheppard,* the investigation and probable cause related to a homicide. Yet, the resulting warrant identified the objects sought as "controlled substances." Notwithstanding this patent "technical error," 468 U.S. at 984, 104 S.Ct. 3424, the *Leon* exception to the exclusionary rule was found to be applicable because "the officers reasonably believed that the search they conducted was authorized by a valid warrant." *Id.* at 988, 104 S.Ct. 3424. Although "[a]n error of constitutional dimensions may have been committed with respect to the issue of the warrant . . . it was the judge [in using the wrong "form" and falsely assuring the officers that he would make the necessary corrections], not the police officers, who made the critical mistake." *Id.* at 990, 104 S.Ct. 3424. The fact that the executing officers either failed to notice, or ignored the continuing facial defect was found to be of no moment.

■ On reconsideration, the Court finds that its initial good faith analysis should not have been limited solely to the face of the warrants. Rather, in determining whether a reasonably well-trained officer should have known that the warrants were impermissibly broad, a more expansive assessment of the attendant circumstances should have been conducted. *Buck,* 813 F.2d at 592–93.

■ So viewed, here, like in *United States v. Feola,* 651 F.Supp. 1068, 1117 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857 (2d Cir. 1989), "there can be no question that the officer's held an objectively reasonable belief" that the search warrants were validly issued.

As noted above, the officers here were fully prepared for the searches via numerous pre-search educational sessions. Searching personnel were given information regarding the extensive criminality found by the grand jury, including the overriding involvement of organized crime in both the crimes charged and in the activities of the four corporations targeted in the warrant. Indeed, that interrelationship was the basis for the government's insistence that the warrants—like those in *United States v. Paccione,* 738 F.Supp. 691 (S.D.N.Y.1990) and *United States v. Johnson,* 886 F.Supp. 1057 (W.D.N.Y.1995), *aff'd,* 108 F.3d 1370 (2d Cir.1997)—are not overly broad as falling within the "all records" exception. Although that position was rejected by the Court (*see* Aug. 12, 1993 Mem. and Order at 38–42), the arguments weighing in its favor were substantial. Under the circumstances, the executing officers were clearly justified—based on an objective reasonableness standard—in concluding that a broad-based search was legitimately authorized by the Magistrate Judge.

Much was made during oral argument on November 5, 1998 of the fact that the Islip fraud did not materialize until 1987. However, the grand jury has concluded that the criminality which began in that year occurred because of organized crime's desire to protect its long-established financial stake in the carting stops in Islip following Hickey's being ousted as an authorized carter within the Township. Accordingly, pre–1987 evidence bearing on the relationship between organized crime and the various defendants is germane to the crimes charged.

Moreover, as testified to by McCormick on October 6, 1998, the Magistrate Judge narrowed the scope of two of the proposed warrants presented for his review (Tr. at 249–253), indicating his significant participation in the process. Also, as further evidenced by McCormick's testimony, an

Assistant United States Attorney was involved. *Id.* at 249–50; *see Sheppard,* 468 U.S. at 989, 104 S.Ct. 3424; *Feola,* 651 F.Supp. at 1118 ("This Court concludes that the expertise of the prosecutors, the judicial findings and the issuance of the search warrant's supported an objectively reasonable good faith belief in probable cause to search the defendants' residences.")

■ Finally, as to the good faith issue, defendants complain that even if, *arguendo,* the warrants were valid, the executing officers grossly exceeded their permissible scope, thereby invalidating the searches. In order to lend support for that proposition, defendants have presented a summary of the documents seized. Of the over 500,000 items, defendants indicate that approximately 13.6% pre-date 1987. The government counters by arguing that the correct percentage is more in the neighborhood of 9%. Which percentage, if either, is correct need not be resolved for the line of demarcation embodied in counsels' submission, *viz.,* 1987, is, as previously noted, unduly restrictive as to what is relevant and subject to seizure. Granted, many items—in absolute, though not in percentage terms—should not have been seized. But the Fourth Amendment standard is reasonableness not perfection. Based on the totality of the circumstances, the transgressions were relatively few, seemingly inadvertent, and are insufficient to destroy the applicability of the good faith exception to the present searches.

The appropriate remedy here is suppression of those items, not invalidation of the entire searches. *See United States v. Matias,* 836 F.2d 744, 747 (2d Cir.1988); *Paccione,* 738 F.Supp. at 709.

### OTHER GROUNDS FOR SUPPRESSION

Defendants advanced a number of grounds in their original motion papers seeking suppression, only some of which have been addressed by the Court in its August 18, 1998 decision or in this decision. The others, however, have been considered and found to be without merit. One warrants further discussion, however, that being the request for a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), with respect to the search at 70 Crane Neck Road. That request is based on a claim that information in the McCormick affidavit was false, which falsity was either known or should have been known by the affiant. Specifically, defendants challenge the assertion therein that two cooperating witnesses told McCormick that each observed various weapons at that location. In maintaining that such information is patently false, it is noted that defendant Russo's probation office made no such observation during her periodic visits to 70 Crane Neck Road. In response, the government submitted an affidavit by the probation officer indicating that the home was protected by an elaborate security system which included a locked gate and a video surveillance system. The period of time which elapsed between her arrival at the outer gate and the time she was allowed entry was more than sufficient to permit any weapons to be easily secreted during each of her visits. That information from the probation officer stands uncontested, either by way of an affidavit from a resident of the home claiming that the premises were, in fact, weapon free, or otherwise. Under the circumstances, no hearing is required.

### CONCLUSION

In sum, upon reconsideration, the Court concludes that the *Leon* good faith exception is applicable. Accordingly, defendants, motion to suppress the evidence seized pursuant to five of the six warrants executed on September 11, 1996 is denied.

SO ORDERED.