*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-2136**

State of Minnesota,
Respondent,

vs.

Jeremy Fredrick Aguirre,
Appellant.

**Filed November 23, 2015**
**Affirmed**
**Cleary, Chief Judge**

Lincoln County District Court
File No. 41-CR-13-174

Lori Swanson, Attorney General, John D. Gross, Assistant Attorney General, St. Paul, Minnesota; and

Glen Petersen, Lincoln County Attorney, Tyler, Minnesota (for respondent)

Deborah Ellis, Susan Lynn Johnson, Ellis Law Office, St. Paul, Minnesota (for appellant)

        Considered and decided by Cleary, Chief Judge; Schellhas, Judge; and Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**CLEARY**, Chief Judge

On appeal from his conviction of second-degree controlled substance crime, illegal possession of a firearm, and theft of electrical services, appellant argues that the district court erred in denying his motion to suppress evidence obtained from the execution of two search warrants. Appellant argues: (1) the first warrant was improvidently issued as it lacked probable cause, allowed a general exploratory search, and was issued for a misdemeanor investigation; (2) the second search was conducted prior to issuance of the second warrant and it too allowed a general exploratory search; and (3) the Receipt, Inventory and Return exposed irregularities in the execution of the warrant that required suppression of the evidence. We affirm.

## FACTS

On October 10, 2013, two employees of Lyon-Lincoln Electric Cooperative went to appellant's residence to collect a past-due payment for electrical services. Appellant did not answer when the employees knocked, so they proceeded to disconnect the power, at which time they discovered that the meter seal had been cut and an unauthorized bypass had been installed on the meter. The employees contacted the Lincoln County sheriff from appellant's residence to report the bypass, and the sheriff began investigating the apparent theft that day. When the sheriff interviewed appellant that evening, appellant said he knew nothing about electricity, did not know when the bypass was

placed on the meter, and did not know who installed it. Appellant also stated that he lives alone, with the exception of occasional weekend visits with his minor child at the residence. During the investigation, the sheriff learned that appellant's criminal history included felony convictions for controlled substance offenses.

On October 14, 2013, the sheriff applied for and received a search warrant authorizing him to look for items related to the theft of electrical services in appellant's residence, his detached garage, and "several dilapidated motor vehicles and motor homes" on the property. On October 15, 2013, the sheriff and five other law enforcement officers executed the search warrant at 12:35 p.m. No one answered when they knocked, so officers entered the house, announced their presence, and stated that they had a search warrant. Officers encountered appellant in the house just after they entered. They then performed a cursory search of the house to make sure no one else was present. At that time, officers observed firearms and what appeared to be marijuana in plain view. Appellant was arrested for being a felon in possession of a firearm and was transported to jail.

The sheriff left appellant's property to prepare an application for a second warrant that would authorize a search for narcotics, drug paraphernalia, and firearms. He faxed the application to the issuing judge from his office and spoke with the judge on a recorded phone line at 2:09 p.m. The sheriff testified that the issuing judge said the search warrant was going to be issued and that he received it via fax before the officers executed the second warrant at 2:54 p.m. Time stamps on the faxed search warrant from

3

the issuing judge indicate that it was not sent to the sheriff until 3:38 p.m. that day. But upon review, the district court judge (who was also the issuing judge) found the sheriff's testimony regarding the time he received the warrant to be more persuasive than the fax machine time stamp.

Officers executed the second search warrant, seized items listed in the first and second warrants, and prepared and filed a single inventory of all items seized pursuant to both search warrants. On October 17, 2013, the state charged appellant with felony possession of a firearm, unlawful drug possession, and theft of electrical services. Appellant challenged the legality of the first search warrant and the legality of the seizure of items pursuant to the second search warrant. In a brief submitted after the omnibus hearing on those issues, appellant specifically argued that the first and second warrants failed to state with particularity the places to be searched; that evidence should be suppressed based on the sheriff's failure to sign the Receipt, Inventory and Return and have it notarized; and that the time stamp on the second warrant showed that the search took place before the warrant was issued, making it a warrantless search and seizure.

The district court held that the first and second warrants described with particularity the location to be searched; that probable cause existed for the issuance of both warrants; that the Receipt, Inventory and Return was lawfully executed; and that both warrants were lawfully executed. A jury subsequently found appellant guilty on all five counts against him. Appellant filed this appeal from the judgment of conviction and sentencing.

**D E C I S I O N**

**First Warrant**

Appellant argues that the first search warrant was improvidently issued because it lacked probable cause, allowed a general exploratory search, and was issued for a misdemeanor investigation. Appellant raises the same general issue that he litigated in the district court, but on appeal, he bases his argument on new theories.

In general, this court declines to review issues not raised before the district court, including constitutional questions of criminal procedure. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). And where an appellant asks this court to review an issue raised and decided in district court, the appellant may not "obtain review by raising the same general issue litigated below but under a different theory." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). However, "constitutional rights can be asserted on appeal when the interests of justice require consideration of such issues, when the parties have had adequate time to brief such issues, and when such issues are implied in the lower court." *Tischendorf v. Tischendorf,* 321 N.W.2d 405, 410 (Minn. 1982).

At the contested omnibus hearing, appellant challenged the legality of the first warrant on the theory that the warrant application failed to describe with particularity the locations to be searched. He did not challenge the particularity of the items to be searched and seized. Appellant now argues that the warrant application did not provide a substantial basis to find probable cause to issue the first warrant; the supporting affidavit did not establish that a theft of electricity had actually occurred; the affidavit listed

5

generic items that could be found on almost any property in the area; and the search warrant allowed a general exploratory search. Appellant focuses on the items to be seized, arguing that the warrant failed to describe them with sufficient particularity. Appellant contends that the language in the first search warrant application is overbroad and reveals that the sheriff "did not have a reasonable, much less strong, suspicion that the items sought . . . would be in any particular place." This court will address appellant's argument that the application failed to state with particularity the items to be searched, because it is entwined with appellant's argument that the application failed to state with particularity the locations to be searched.

The United States and Minnesota Constitutions require that search warrants particularly describe the place to be searched, as well as the person or things to be seized. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5, 104 S. Ct. 3424, 3427 n.5 (1984). The particularity requirement prevents a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S. Ct. 2022, 2038 (1971). The particularity requirement also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh v. Ramirez*, 540 U.S. 551, 561, 124 S. Ct. 1284, 1292 (2004) (quotation omitted).

6

Where a party challenges a district court's issuance of a search warrant, "[the] appellate court reviews [the] district court's decision to issue a warrant only to consider whether the issuing judge had a substantial basis for concluding that probable cause existed." *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001). This court gives great deference to a district court's probable cause determination in issuing a search warrant. *State v. Miller*, 666 N.W.2d 703, 713 (Minn. 2003).

> The issuing judge is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Zanter*, 535 N.W.2d 624, 633 (Minn. 1995) (quotation omitted). "[W]hen determining whether a clause in a search warrant is sufficiently particular, the circumstances of the case must be considered, as well as the nature of the crime under investigation and whether a more precise description is possible under the circumstances." *Miller*, 666 N.W.2d at 713. "Where the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the generic class of items will suffice . . . ." *Id.* (quotation omitted).

Applying the deferential substantial-basis standard, we hold that the issuing judge had probable cause to issue the first search warrant. The warrant application described what electric cooperative employees found at appellant's residence and included photographs of the broken meter seal and the wire bypass. It described the sheriff's interviews with appellant and with the cooperative's general manager. During the

interview, appellant confirmed that he lived alone at the property, denied any knowledge of the bypass, and stated that a friend of his had worked on the electrical service on the property sometime in October or November 2011. The electric cooperative general manager told the sheriff that data stored in the meter at appellant's residence suggested that the meter tampering had occurred sometime within the previous month. He also told the sheriff that instructions for installing a meter bypass can be found on the Internet. The application went on to state that appellant is the person who pays for electrical services at the property and would benefit from a reduction in billed services there. These alleged facts establish probable cause to believe that electrical services were being stolen at appellant's residence, and that additional evidence of the theft would be found at the property where the services were allegedly being stolen.

The warrant application listed the property and things to be sought with sufficient particularity given the circumstances of this case. The application asked for permission to search for "Any Number 6/or similar in diameter bare solid copper wire . . . [w]ire cutters, tin snips, pliers, and any and all cutting tools that could provide forensic information or tool marks for forensic comparison." It also listed clothing or protective equipment used in accessing electrical devices, and computers or cell phones that may contain Internet search information on meter tampering. Depending on the circumstances of the case, reference to a generic class of items may be sufficiently particular where precise identification of the items is not possible at the time of application. *Miller*, 666 N.W.2d at 713. In the absence of more precise knowledge of the specific items used to

8

commit the crime, the sheriff identified categories such as "cutting tools" or "protective equipment" believed to be necessary to that crime. The warrant application does not allow law enforcement to take all wire, any and all tools, or any and all types of clothing. And while the sheriff had reason to believe that appellant would use a laptop or a cell phone to search for information on how to install a bypass, the sheriff did not need to know with certainty whether this happened or exactly what kind of device appellant used. Based on the circumstances of the case and the "flexibility [of] the particularity requirement," the warrant was sufficiently particular. *State v. Poole*, 499 N.W.2d 31, 34 (Minn. 1993).

As for the particularity of the locations to be searched, the applications for the first and second warrants contained identical language describing the place to be searched. In each application, the sheriff described the residence and gave its geographical location, described a detached garage and gave its location relative to the residence, and noted that several "dilapidated" vehicles and motor homes were located on the property. In the first search warrant application, the sheriff stated that he had reason to believe that items related to the theft of electricity (i.e., wire cutters, copper wire, computers/cell phones, electric bills, literature about electric meter tampering, and protective clothing) would be found in the places he described. In his briefing before the district court, appellant noted the sheriff's lack of knowledge as to how many vehicles were on the property at the time he asked for authority to search them, suggesting that this lack of knowledge confirms the sheriff's uncertainty as to where items to be seized would likely be found. The district

court found that the first warrant "described with particular[ity] the property, specifically the residence, to be searched."

Appellant appears to argue that the sheriff should have indicated where he thought particular items would be found on the property. Appellant points to the "application's failure of specificity or strong basis for suspecting various items as instruments of a crime and to be in a particular place." Given all the circumstances set forth in the affidavit, the district judge was not unreasonable in finding that the listed items would likely be found in the residence, the garage, or in vehicles and motor homes on the property. There is a fair probability that where a bypass has been installed in a meter serving a residence, items used to install that bypass would be found in a house or a garage on the same property. While it is arguably less likely that such items would be stored in cars and motor homes, the fact that the vehicles were "dilapidated" suggests they were likely stationary and used as much for storage as for transportation.[1] The district court did not err in finding that the description of the places to be searched was sufficiently particular.

Finally, appellant argues that the suspected theft of electrical services is a misdemeanor-level offense, and as such, it did not support issuance of the first search warrant. This argument has no merit. A misdemeanor is a crime and thus a suspected misdemeanor offense supports the issuance of a search warrant.

---

[1] On October 16, 2013, the sheriff filed a supplemental report describing comments appellant made during a recorded interview with the sheriff. The report indicates that one of two vehicles parked in the yard at the property was broken down and did not run.

A court may issue a search warrant on the grounds that the property or things to be searched "were used as the means of committing a crime" or "the property or things to be seized consist of any item or constitute any evidence which tends to show a crime has been committed, or tends to show that a particular person has committed a crime." Minn. Stat. § 626.07 (2014). For the purposes of this statute, the term "crime" "includes . . . all violations of municipal ordinances for which a misdemeanor sentence may be imposed" and offenses defined as crimes under Minn. Stat. § 609.02, subd. 1 (2014). Minn. Stat. § 626.05, subd. 3 (2014). "Crime" is "conduct which is prohibited by statute and for which the actor may be sentenced to imprisonment, with or without a fine." Minn. Stat. § 609.02, subd. 1. Here, law enforcement sought to investigate a suspected theft of electrical services, an offense that can carry a sentence of imprisonment for not more than 90 days, or a fine of not more than $1,000, or both. Minn. Stat. § 609.52, subd. 3(5) (2014). Because the offense being investigated constituted a "crime" for the purposes of Minn. Stat. § 626.07, it was sufficiently serious to support issuance of the first search warrant.

**Second Warrant**

Appellant argues that law enforcement conducted the second search prior to issuance of the second warrant, and therefore evidence from that search should have been suppressed. After the omnibus hearing and briefing from the parties, the district court held that the second warrant was lawfully executed. The court found that "[n]o search for or seizure of items identified in the Second Warrant occurred prior to the execution of the

11

Second Warrant." The court specifically found that law enforcement received the second warrant at approximately 2:09 p.m. on October 15, 2013 and executed it at approximately 2:54 p.m. on the same day. The court explained that, on the issue of the time stamp discrepancy, it was crediting the sheriff's testimony regarding the time that the second warrant was executed.

"When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted). This court gives "due regard" to "the district court's opportunity to judge the credibility of witnesses." *Snyder v. Comm'r of Pub. Safety*, 744 N.W.2d 19, 22 (Minn. App. 2008).

Here, the district court found the sheriff's testimony more reliable than the Lyon County Court Administration fax machine time stamp. The sheriff testified that he called the judge to obtain the second warrant and when she returned his call, she told him she "saw no problem with the warrant and it was going to be issued." That call was on a recorded line at the sheriff's office, and the sheriff testified that he was able to refer to the office "voice logging system" to determine that the judge returned his call at 2:09 p.m. The time stamps at the bottom of each page of the sheriff's application appear to show that he faxed the application and supporting affidavit and the search warrant form to the issuing judge between 2:06 p.m. and 2:18 p.m. on October 15, 2013. That time range is roughly consistent with the sheriff's testimony regarding when he spoke with the judge

about the second warrant. The district court found that law enforcement received the second warrant at *approximately* 2:09 p.m. The time of the phone call and the faxing corresponds generally with this approximate time. The time range is also not inconsistent with the time the search occurred, according to the Receipt, Inventory and Return. That document indicates the second warrant was executed at 2:54 p.m. The discrepancy arises from the time stamp at the top of each sheet of the warrant, which indicates that it was faxed from the issuing judge at Lyon County Court Administration to the sheriff between 3:38 and 3:40 p.m. The district court found the sheriff's testimony more convincing than the Lyon County Court Administration time stamp. The court noted during the omnibus hearing that it did not have a means of confirming the accuracy of the time stamp.

Because it is conceivable that the sheriff faxed the application and affidavit, spoke with the judge, and received the signed warrant before executing it at 2:54 p.m., the district court did not clearly err in finding that the second warrant was issued before it was executed. In this case the reviewing judge was also the judge who issued both warrants. A reviewing judge's ability to view a warrant with an impartial perspective is enhanced when the reviewing judge is not the same person who approved an application for the warrant being reviewed. Fresh eyes are helpful, and while the fact that the reviewing judge was also the issuing judge does not constitute clear error, it is not a best practice and should be avoided to the extent possible.

Appellant also argues that, like the first warrant, the second warrant failed to state with particularity the places to be searched. Appellant raised this issue before the district

13

court and argues it very briefly on appeal. Applying the deferential substantial-basis standard of review, we hold that the second warrant stated the places to be searched with sufficient particularity. There is a substantial basis for the belief that firearms, drugs, and drug paraphernalia would be found in a house where these items have already been seen in plain view. Likewise, there is a substantial basis for the belief that these items would be in a garage or in an apparently immobile vehicle or motor home on the same property, given the totality of the circumstances.

Lastly, appellant argues that irregularities in the Receipt, Inventory and Return support suppression of all evidence seized under the second warrant. Appellant bases his argument on the fact that the sheriff listed all items seized pursuant to the first and second warrants in a single Receipt, Inventory and Return document. Tools and wire—items associated with the first warrant—are intermingled with drug-related items that were authorized by the second warrant. In the district court, appellant argued that there were problems with the Receipt, Inventory and Return, but he did not base his argument on the same theory. Instead, he argued that the sheriff did not sign the document, did not have it notarized, and did not provide a signed, notarized copy to the defense. Appellant therefore failed to preserve this issue for appeal and we decline to review it.

In this case, officers used one Receipt, Inventory and Return to record property and things seized pursuant to two search warrants. Minnesota law requires officers executing a search warrant to create a receipt and an inventory for any property or things taken pursuant to the warrant. Minn. Stat. §§ 626.16-.17 (2014). While listing all the

14

items seized pursuant to multiple search warrants in one Receipt, Inventory and Return technically complies with the statutory requirement and may be more expedient from the perspective of law enforcement, creating a separate document for each search warrant is the better practice, as it more fully addresses the statutory directive and ensures a clear record for judicial review.

**Affirmed.**

15