**UNITED STATES of America, Appellee/Cross Appellant,**

v.

**Bruce Robert NELSON, Appellant/Cross Appellee.**

Nos. 93–3628, 93–3848.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1994.

Decided Sept. 29, 1994.

Mark S. Wernick, Minneapolis, MN, argued, for appellant.

Carol A. Needles, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, ROSS, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

ROSS, Senior Circuit Judge.

Appellant Bruce Robert Nelson pled guilty to one count of possession with the intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). Appellant's plea was conditioned on his right to appeal the denial of his motions to suppress evidence and statements. We reverse.

## I.

Police officers sought a warrant to stop appellant at the Minneapolis/St. Paul Airport and search him and his luggage, based on information from a confidential informant that he was transporting illegal narcotics into the St. Paul area. The affidavit presented to the issuing judge indicated that the police believed appellant transported the heroin in his rectum and requested a search warrant "for the person of Bruce Robert Nelson, . . . including a search of his body cavities, as well as all luggage under his control." Although the affidavit requested a search of body cavities, the search warrant application prepared by the officers only sought permission to search appellant's "person." Moreover, the search warrant actually obtained only authorized a search of appellant's person and did not mention body cavities, nor did it incorporate the affidavit by reference.

On February 8, 1993, at approximately 7:47 p.m., appellant was observed deplaning from a flight from Phoenix and was eventually stopped for execution of the warrant. Appellant was handcuffed behind his back after taking an "aggressive stance" with the officers and was led to a police substation in the airport where his clothing and luggage were searched by the officers and a drug-sniffing dog. No evidence of drugs was discovered. He was then placed under arrest and advised of his *Miranda* rights and his request for a lawyer was denied during the execution of the warrant. He was told the officers were going to conduct a search of his rectum and was shown a copy of the search warrant on request, but was not shown the affidavit. His pants were forcibly removed but a visual inspection of the rectum was impossible because appellant refused to cooperate.

At approximately 9:00 p.m., appellant was taken to the Hennepin County Medical Center where a doctor attempted to perform a rectal exam while the officers restrained the appellant. Appellant again requested to see a lawyer, but was told he would be unable to do so until the body cavity search was completed. The examination was difficult because appellant resisted, and the results were inconclusive as to whether a foreign object was felt. No further rectal exam or rectal extraction was attempted because the packaging of the foreign object was unknown and medical personnel did not wish to risk a rupture that would poison appellant. At 9:50 p.m., an x-ray was taken of appellant's pelvic area which revealed that a foreign object was in fact lodged in the rectum or small intestine. The attending physician recommended the administration of laxatives which would cause the appellant to expel the object with bowel movements. An attempt was first made to administer the laxatives through a tube from appellant's mouth to his stomach, and then from his nose to his stomach. When neither method worked because of appellant's protests, appellant agreed to drink the laxatives.

Sometime prior to the administration of the laxatives, and unbeknownst to the doctor or the officers, appellant expelled the foreign object and then swallowed it. On February 9, at 2:30 a.m., appellant had his first bowel movement after taking the laxatives, but the results were negative for a foreign object. At 3:10 a.m. a second x-ray revealed that appellant must have passed the foreign object and then swallowed it because the packet was now lodged in his stomach.

On the morning of February 10, it became obvious that the matter would not be resolved in short order and the officers sought an extension of time within which appellant had to be brought before a judge. This extension was granted until February 12, 1993, at 4:00 p.m.

After the object was initially discovered in appellant's stomach, the doctors decided to continue to give appellant laxatives in order

to flush out the object rather than physically remove it. From approximately 3:00 a.m. on February 9, until the afternoon of February 10, appellant consumed twelve liters of the laxatives. Despite multiple evacuations, the packet not only did not pass, but remained lodged in the stomach. Appellant was allowed no solid food during this time in order to avoid an obstruction necessitating surgery, but he was given nutrition intravenously. After much discussion among the hospital personnel and a total of four more x-rays, it was decided that extraction of the object was necessary, as there was little possibility that it would pass naturally. Appellant was required to choose to either undergo surgery or submit to an endoscopy [1] in order to have the object removed. Appellant chose the endoscopy after being advised of the nature and risks of each procedure. The procedure was successful and the retrieved object was found to be a packet of heroin wrapped in a plastic bag and sealed with black electrical tape. Shortly after the retrieval of the heroin, the appellant, on his own initiative, confessed in detail about how he obtained the heroin and the means by which he smuggled the heroin into St. Paul.

## II.

Appellant moved to suppress the heroin seized and the statements made to the officers. While the trial court found that there was probable cause to issue the search warrant, it concluded that the search violated the Fourth Amendment because the warrant only authorized a search of appellant's "person" and not a body cavity search. Nonetheless, the evidence was ruled to be admissible based on the good faith exception to the exclusionary rule. Appellant pled guilty to the charge, reserving the right to appeal the suppression rulings.

■ We agree with the district court that the search warrant for appellant's "person" was not sufficient to authorize a body cavity search. Although the government contends the affidavit specifically requested permission to conduct a body cavity search,

the warrant itself made no similar reference, nor was the affidavit incorporated by reference into the warrant. The traditional rule is that, failing an incorporation by reference, "the generality of a warrant cannot be cured by the specificity of the affidavit which supports it." *United States v. Johnson,* 541 F.2d 1311, 1315 (8th Cir.1976); *see also United States v. Decker,* 956 F.2d 773, 778 (8th Cir.1992). "Specificity is required in the warrant itself in order to limit the discretion of the executing officers as well as to give notice to the party searched." *United States v. Johnson,* 541 F.2d at 1315.

The need to provide specificity in a warrant is clearly exhibited in this case where appellant was to be subjected to a body cavity search and twice asked to see the warrant authorizing the search before submitting to this invasive procedure. The warrant in this case was unable to convince the appellant of the officers' authorization to conduct such a search. *See United States v. Cameron,* 538 F.2d 254, 259 (9th Cir.1976) (A "warrant defines the scope of the search, so that the suspect will know what procedures he faces.").

■ Our conclusion that the warrant did not authorize a body cavity search, however, does not end our inquiry as the district court nevertheless concluded that the evidence need not be suppressed because of the officers' good faith reliance on a valid search warrant. The Supreme Court has held that the exclusionary rule does not operate to exclude evidence seized by a law enforcement officer acting in objectively reasonable reliance on a warrant issued by a neutral and detached magistrate, though the warrant is later determined to be invalid. *See United States v. Leon,* 468 U.S. 897, 922–23, 104 S.Ct. 3405, 3420–21, 82 L.Ed.2d 677 (1984); *Massachusetts v. Sheppard,* 468 U.S. 981, 990–91, 104 S.Ct. 3424, 3428–29, 82 L.Ed.2d 737 (1984).

The officers in the present case stated that, as evidenced by the affidavit, it is clear they intended to obtain and believed they

---

1. An endoscopy is a medical procedure during which a tube is placed into the patient's mouth and esophagus, and then into the stomach. The tube is equipped with a snaring device that can catch an object and remove it orally.

had obtained a warrant to search the appellant's body cavities. Prior to seeking the warrant, the officer was instructed by his supervisor that a warrant for the "person" was sufficient to search the suspect's body cavities as well. Based on this advice, the officer felt satisfied that the resulting search fit within the scope of the warrant.

We conclude, however, that even if we agree that the officers could have reasonably believed that the warrant included authorization for a body cavity search, there is no "objectively reasonable basis for the officers' mistaken belief" that the authorization contained in the warrant extended to the endoscopy. *See Massachusetts v. Sheppard, supra,* 468 U.S. at 988, 104 S.Ct. at 3427–28. Although the appellant argues that the x-rays, the administration of laxatives, two days in the hospital under restraints, and the administration of narcotic sedatives also violated his Fourth Amendment rights, we do not reach these issues here. Instead, we conclude that the *Leon* exception does not apply in this case because the endoscopy exceeded the scope of what any reasonable police officer would believe to be authorized by the search warrant.

 Nor do we accept the government's argument that exigent circumstances justified the warrantless intrusion of the endoscopy procedure. In *Schmerber v. California,* 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966), the Supreme Court set forth a general rule requiring a warrant for intrusions upon the human body but left open the door to warrantless intrusions based upon exigent circumstances. Exigent circumstances exist where the delay necessary to obtain a warrant jeopardizes the preservation of evidence or threatens the defendant's life. Here, the appellant was under constant police surveillance because the officers knew that appellant might again attempt to pass and then dispose of the packet. Further, although the doctors were concerned that the packet could possibly rupture with further manipulation or eventually dissipate with time, there was no immediate threat nor any emergency medical procedures conducted to remove the packet. In fact, because there was no medical emergency, the doctors de-

cided to administer laxatives after the packet was initially discovered in appellant's stomach in order to cause the packet to pass naturally. Over thirty-six hours after the packet was discovered in appellant's stomach the physicians determined that the packet had to be removed either surgically or with an endoscopy. There was no medical exigency to excuse the officers' failure to obtain further judicial authorization prior to the endoscopy.

In sum, we conclude that the endoscopy was a warrantless search conducted in the absence of exigent circumstances and as such constituted a violation of appellant's Fourth Amendment rights. Accordingly, we reverse the district court's refusal to suppress the evidence obtained as a result of the search and the statements made thereafter which we consider to be "fruit of the poisonous tree." *See Brown v. Illinois,* 422 U.S. 590, 604–05, 95 S.Ct. 2254, 2262–63, 45 L.Ed.2d 416 (1975) (statement must be suppressed when obtained by exploitation of the illegality of the search or arrest). The case is reversed and remanded to the district court.