**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 14, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DAVID ECKERT,

     Plaintiff - Appellant,

v.

DEPUTY DISTRICT ATTORNEY
DANIEL DOUGHERTY,

     Defendant - Appellee,

and

CITY OF DEMING; BOBBY OROSCO;
ROBERT CHAVEZ; OFFICER
HERNANDEZ; HIDALGO COUNTY;
HILDALGO COUNTY SHERIFF
OFFICERS DAVID ARREDONDO,
ROBERT RODRIGUEZ, PATRICK
GREEN; GILA REGIONAL MEDICAL
CENTER; ROBERT WILCOX, M.D.;
OKAY ODOCHA, M.D.,

     Defendants.

No. 15-2204
(D.C. No. 2:13-CV-00727-JB-WPL)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

David Eckert appeals the district court's judgment in favor of Deputy District Attorney Daniel Dougherty in a civil-rights suit under 42 U.S.C. § 1983. Concluding that Mr. Dougherty was entitled to qualified immunity, the district court granted his motion to dismiss. The court also denied Mr. Eckert's motion to amend his complaint. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

### I. Factual Background

Because the district court disposed of Mr. Eckert's claims on a motion to dismiss, the facts are taken from Mr. Eckert's complaint unless otherwise indicated.

On January 2, 2013, police officer Robert Chavez stopped Mr. Eckert for failing to obey a stop sign in Deming, New Mexico. Officer Chavez said that while patting Mr. Eckert down, he noticed his "posture to be erect and he kept his legs together." Aplt. App. at 17 (internal quotation marks omitted). Another officer arrived and issued Mr. Eckert a citation. Officer Chavez told Mr. Eckert he was free to go, but then began questioning him. Officer Chavez decided to search Mr. Eckert's car; it is disputed whether Mr. Eckert consented to the search.

Hidalgo County Sheriff Deputies David Arredondo and Patrick Green brought a "narcotics canine" to search the vehicle. *Id.* The officers reported that the dog alerted to the driver's seat. "[Officer Bobby] Orosco and [Deputy] Arredondo then informed [Officer] Chavez that [Mr. Eckert] was known in Hidalgo County to insert drugs into his anal cavity." *Id.* This information was false.

2

Officer Chavez contacted Mr. Dougherty about getting a search warrant for Mr. Eckert's vehicle and person. The officer wrote an affidavit in support of the warrant stating that the search was "to include but not [be] limited to [Mr. Eckert's] anal cavity." *Id.* at 18 (internal quotation marks omitted). The affidavit primarily relied on the following facts to establish probable cause: (1) Mr. Eckert's posture as observed by Officer Chavez (standing erect with his legs together); (2) the dog alert; and (3) the statement by the law-enforcement officer(s) (identified in the affidavit only as a Hidalgo County K-9 officer) that Mr. Eckert "was known to insert drugs into his anal cavity and had been caught in Hidalgo County with drugs in his anal cavity." Dist. Ct. CM/ECF Doc. 26-1 at 2.[1] Mr. Dougherty reviewed the affidavit and approved it, and a judge signed the search warrant.

Officer Chavez took Mr. Eckert to the Deming Emergency Room to execute the warrant. The attending physician, however, refused to conduct an exam on the ground that it was medically unethical. Mr. Dougherty then authorized Officer Chavez to transport Mr. Eckert to another medical facility.

Officer Chavez and an Officer Hernandez took Mr. Eckert to Gila Regional Medical Center. A doctor there conducted an abdominal X-ray, which showed no foreign object in Mr. Eckert's rectum or elsewhere in his abdomen. Dr. Robert Wilcox then performed a digital rectal exam and reported that he felt

---

[1] Although the appellant's appendix does not include either the warrant application or the search warrant, "we have authority to review them because we may take judicial notice of public records, including district court filings." *Guttman v. Khalsa*, 669 F.3d 1101, 1127 n.5 (10th Cir. 2012).

something soft that could have been stool. He referred Mr. Eckert to Dr. Okay

Odocha for a surgical consultation. Dr. Odocha performed a second digital rectal

exam and detected only stool. Nevertheless, he ordered that Mr. Eckert be

administered enemas until all results were "clear." *Id.* at 20 (internal quotation marks

omitted). Mr. Eckert was subjected to three enemas, but his bowel movements

produced no narcotics. After the third enema, a doctor took a chest X-ray, which also

revealed no evidence of narcotics. Nevertheless, Dr. Odocha ordered a colonoscopy,

which was conducted in the early morning of January 3. The colonoscopy also

revealed no evidence of narcotics.

## II.    Procedural Background

Mr. Eckert filed a civil-rights complaint against Mr. Dougherty as well as the

officers and medical personnel. Only the claims against Mr. Dougherty are at issue

in this appeal. Those claims are based on two actions—the approval of the search

warrant and affidavit, and the authorization for officers to take Mr. Eckert to Gila

Regional Medical Center.

Mr. Dougherty moved to dismiss on the grounds of absolute and qualified

immunity.[2] Mr. Eckert opposed dismissal. After holding a hearing, the district court

entered a short order granting dismissal. In this order the court found that

---

[2] Because immunity is an affirmative defense that Mr. Dougherty raised in his answer, this motion, ostensibly made under Rule 12(b)(6), is more accurately described as a Rule 12(c) motion for judgment on the pleadings. *See Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011). But the error is immaterial because this court applies the same standard of review to both Rule 12(c) and Rule 12(b)(6) motions. *See id.*

4

prosecutorial immunity protected Mr. Dougherty from liability for approving the search warrant. The court dismissed the complaint without prejudice to amendment, stating, "Plaintiff David Eckert may file a motion for leave to amend the Complaint to allege that Dougherty directed police officers to conduct an unlawful search." Aplt. App. at 108.

Four months later, Mr. Eckert moved to amend his complaint. The proposed amended complaint did not seek to add any new theories, and Mr. Eckert conceded that he "does not and cannot allege that Dougherty directed the officers to conduct an unlawful search." *Id.* at 112. Instead, the amended complaint presented additional factual allegations about a conversation between Mr. Dougherty and the attending physician at the Deming Emergency Room that purportedly showed that Mr. Dougherty was aware that initial tests could lead to false positives and additional (and possibly more invasive) tests. Mr. Eckert represented that he was not aware of the details of the conversation before filing his complaint.

The district court held a hearing on the motion to amend, at which it clarified that the basis for its decision had been qualified immunity, not prosecutorial immunity.[3] It discussed its views of the various issues and denied the motion to amend, a decision it soon memorialized in a short written order. The district court later issued a comprehensive memorandum opinion discussing its reasons for granting the motion to dismiss and denying the motion to amend. In this order it held

---

[3] The appellant's appendix does not include the transcript of this hearing, but the district court summarized the proceedings in its memorandum opinion.

the following:  the search warrant affidavit established probable cause; the search warrant's description of the area to be searched was sufficiently particular; Mr. Dougherty did not violate Mr. Eckert's constitutional rights by allowing officers to take him to Gila Regional Medical Center; all procedures after the first digital exam and the first X-ray were unconstitutional; but Mr. Dougherty neither knew nor reasonably should have known that his actions would lead to constitutional violations.  The district court further held that even if Mr. Dougherty had violated Mr. Eckert's constitutional rights, the law was not clearly established.  It denied the motion to amend on the grounds that it was untimely and was futile because the proposed additional facts failed to show that Mr. Dougherty knew or should have known that his actions would cause others to violate Mr. Eckert's constitutional rights.  Mr. Eckert appeals both the dismissal and the denial of leave to amend.

## DISCUSSION

### I.    Dismissal

"This court reviews de novo a district court's grant of a motion to dismiss based on qualified immunity."  *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010).  "Once the qualified immunity defense is asserted, the plaintiff bears a heavy two-part burden to show, first, the defendant's actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue."  *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).  A right is clearly established if "a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from

6

other courts shows that the right must be as the plaintiff maintains." *Id.* (internal quotation marks omitted). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment," because "[a]t the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Id.* (alterations and internal quotation marks omitted). "We may consider the two parts of [the qualified-immunity] test in the sequence we deem best in light of the circumstances in the particular case." *Mink v. Knox*, 613 F.3d 995, 1000 n.4 (10th Cir. 2010).

Mr. Eckert does not argue that the district court erred in determining which medical procedures were constitutional and which were not; instead, he focuses on the alleged insufficiencies in the warrant (so that *no* procedure performed under the warrant was constitutional). Therefore, we do not reexamine whether the district court properly concluded that the abdominal X-ray and the first digital exam were constitutional and the later procedures were not. Nothing in this decision, however, should be read to condone any of the procedures, given the significant privacy interests in avoiding forced medical intrusions. *See, e.g., Birchfield v. North Dakota*, 136 S. Ct. 2160, 2176-78 (2016) (blood tests for impaired driving implicate significant privacy interests, while breath tests do not).

Mr. Eckert argues that Mr. Dougherty violated his clearly established Fourth Amendment rights (as applicable to the states through the Fourteenth Amendment) by (1) approving an unconstitutional search-warrant application, and (2) authorizing the

officers to continue his detention and to transport him to Gila Regional Medical Center.

## A.    Approving the Warrant

We have held that a prosecutor may be liable for causing the issuance of an unconstitutional search warrant. *See Mink*, 613 F.3d at 1001-03.  "The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Id.* at 1001 (internal quotation marks omitted).  "The plaintiff may demonstrate causation by showing an affirmative link between the constitutional deprivation and the [defendant's] exercise of control or direction." *Id.*

To be constitutional, a search warrant must be issued by a neutral, disinterested magistrate; must be based on "probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense"; and "must particularly describe the things to be seized, as well as the place to be searched." *Id.* at 1003 (internal quotation marks omitted).  Mr. Eckert asserts that the search warrant affidavit drafted by Officer Chavez and approved by Mr. Dougherty did not adequately establish probable cause and did not particularly describe the area to be searched and the methods to be used.  He argues that "it is foreseeable that approval of a warrant, unsupported by probable cause and unspecific as to the location of the place to be searched, will result in a search that violates the rights of the subject."  Aplt. Br. at 45.

### 1. Probable Cause

Mr. Eckert first argues that the affidavit did not establish probable cause. "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Mink*, 613 F.3d at 1003 (internal quotation marks omitted). "Probable cause exists if facts and circumstances within the [official's] knowledge and of which [he] had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* (internal quotation marks omitted). "All we have required is the kind of fair probability on which reasonable and prudent people, not legal technicians, act. In evaluating whether the State has met this practical and common-sensical standard, we have consistently looked to the totality of the circumstances." *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (brackets, citations, and internal quotation marks omitted); *see also Illinois v. Gates*, 462 U.S. 213, 230-32 (1983) (discussing the totality-of-the-circumstances approach). "In the qualified immunity context, we ask whether an objectively reasonable [official] could conclude that the historical facts at the time of the arrest amount to probable cause." *Maresca v. Bernalillo Cty.*, 804 F.3d 1301, 1310 (10th Cir. 2015) (internal quotation marks omitted), *cert. denied*, 136 S. Ct. 2509 (2016); *see also Gates*, 462 U.S. at 236, 238-39 (discussing deferential standard of review). We limit our review to that question. In other words, in light of clearly established law can we say that Mr. Dougherty could not reasonably have concluded that the warrant affidavit established probable cause. *See Messerschmidt v. Millender*, 132 S. Ct. 1235, 1250

9

(2012) ("Even if the warrant in this case were invalid, it was not so obviously lacking in probable cause that the officers can be considered 'plainly incompetent' for concluding otherwise."); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.").

Mr. Eckert argues that "every fact relied upon in the affidavit is deficient," and that the three primary facts—his posture, the dog alert, and the statement about his habits—"amount to nothing more than hunches . . . [that] are worth no more as evidence together than they are worth individually." Aplt. Br. at 38. We disagree with Mr. Eckert's assessment that no reasonable official could conclude that the historical facts amount to probable cause. To be sure, as recognized by the district court, some of the affidavit's factual recitations are flawed. As the court also recognized, however, the flaws did not eliminate all probative value.

To begin with, other law-enforcement officers informed Officer Chavez that Mr. Eckert "was known to insert drugs into his anal cavity and had been caught in Hidalgo County with drugs in his anal cavity." Dist. Ct. CM/ECF Doc. 26-1 at 2. "Police work often requires officers to rely on the observations, statements, and conclusions of their fellow officers," *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1260 (10th Cir. 1998), and "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied

10

for by one of their number," *United States v. Ventresca*, 380 U.S. 102, 111 (1965); *see Foote v. Spiegel*, 118 F.3d 1416, 1424 (10th Cir. 1997) ("Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion and probable cause for an arrest."). "[A] police officer who acts in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable." *Baptiste*, 147 F.3d at 1260 (internal quotation marks omitted). Officer Chavez could reasonably rely on the information about Mr. Eckert from a fellow officer. It is not necessary that the other officer be named; it is enough that he was identified as an "Hidalgo County K-9 Officer," Dist. Ct. CM/ECF Doc. 26-1 at 2.

In that light, the officer's evaluation of Mr. Eckert's posture is significant. "A magistrate is entitled to rely on the expert opinions of officers when supporting factual information is supplied in the affidavit." *United States v. Cook*, 949 F.2d 289, 292-93 (10th Cir. 1991); *see also United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990) ("Courts frequently have relied on the expert opinion of officers in determining where contraband might be kept."). And even though we doubt that the dog's alert alone could suffice if it were not shown that the dog was a certified drug dog, *see Harris*, 133 S. Ct. at 1057 ("If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search."); *United States v. Kennedy*, 131 F.3d 1371, 1376-77 (10th Cir. 1997) ("[A]

11

search warrant based on a narcotics canine alert will be sufficient on its face if the affidavit states that the dog is trained and certified to detect narcotics."), Mr. Eckert has not cited any binding authority requiring the court to ignore the suggestiveness of the alert by what the complaint describes as a "narcotics canine." Aplt. App. at 17.

"[C]ourts may not engage in a 'divide-and-conquer' analysis of facts to determine whether probable cause existed." *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004). Although this is a close question, an objectively reasonable official could have concluded that the facts at the time of the request for the search warrant, combined with the reasonable inferences to be drawn therefrom, amounted to probable cause. Accordingly, Mr. Dougherty is entitled to qualified immunity on this portion of the claim. *See Messerschmidt*, 132 S. Ct. at 1250; *Malley*, 475 U.S. at 341.

### 2. Particular Description

Mr. Eckert also argues that the warrant insufficiently described the place to be searched and the manner in which the search was to be conducted. "[P]ractical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the premises to be searched. Therefore, a warrant description is sufficient if it enables the officers to ascertain the place to be searched with reasonable effort." *United States v. Occhipinti*, 998 F.2d 791, 799 (10th Cir. 1993) (citation and internal quotation marks omitted). As with our probable-cause analysis, the issue is not whether the warrant was sufficiently particular, but whether in light of clearly established law, every reasonable official

12

would have recognized that it was not sufficiently particular. *See Messerschmidt*, 132 S. Ct. at 1250; *Malley*, 475 U.S. at 341.

The warrant authorized the search of Mr. Eckert's "person . . . , to include but not limited to his anal cavity." Dist. Ct. CM/ECF Doc. 26-1 at 1. Mr. Eckert complains that the warrant authorized the search of his entire body and that even the specific reference to his "anal cavity" is too vague because "'[a]nal cavity' is not a term used in medicine and simply refers to what the anus is – an opening." Aplt. Br. at 40.

In addressing the overbreadth of a search warrant, this court has held with respect to computer searches that the text of the warrant should be read "with due regard to context, coupled with the specifics of the supporting affidavit." *United States v. Burgess*, 576 F.3d 1078, 1092 (10th Cir. 2009). In *United States v. Brooks*, 427 F.3d 1246, 1252 (10th Cir. 2005), for example, we recognized that "the language of the warrant may, on first glance, authorize a broad, unchanneled search through Brooks's document files." But, we continued, "as a whole, [the warrant's] language more naturally instructs officers to search those files only for evidence *related to child pornography*. In this light, the warrant should be—and was—read by officers to implicitly place the same restriction (*i.e.*, to locate child pornography) on the scope of the entire search." *Id.*

The Eighth Circuit has considered similar reasoning in a context analogous to the circumstances before us. In *United States v. Nelson*, 36 F.3d 758, 759 (8th Cir. 1994), officers subjected the defendant to several medical procedures, including an

13

endoscopy, under the authority of a warrant to search the defendant's "person." The court held that "the search warrant for appellant's 'person' was not sufficient to authorize a body cavity search." *Id.* at 760. The court further considered, however, whether the affidavit, which purportedly requested permission for a body-cavity search, could cure the warrant. *See id.* In those circumstances the court held that it could not, because it was not incorporated into the warrant by reference. *See id.* And the court went on to note that "even if . . . the officers could have reasonably believed that the warrant included authorization for a body cavity search, . . . the endoscopy exceeded the scope of what any reasonable police officer would believe to be authorized by the search warrant." *Id.* at 761.

Although the warrant here authorized a search of Mr. Eckert's "person," it went beyond that general reference to identify Mr. Eckert's "anal cavity." Dist. Ct. CM/ECF Doc. 26-1 at 1. And unlike in *Nelson*, the supporting affidavit, which also discussed the "anal cavity," was incorporated into the warrant. *See* Dist. Ct. CM/ECF Doc. 26-2 at 1. That affidavit made it clear that officers suspected Mr. Eckert was hiding drugs in his rectal area. The term "anal cavity" may not be medically accurate, but we must "interpret search warrant affidavits in a common sense and realistic fashion," *Burgess*, 576 F.3d at 1091 (internal quotation marks omitted). In layman's terms, the "anal cavity" corresponds to an area reasonably associated with the rectum and colon. It is evident from the context that the warrant should not be read to allow medical searches of all portions of Mr. Eckert's body, but instead must be read to focus on his rectal area. A reasonable official reading in

14

context and using common sense thus would not necessarily consider the warrant to be overbroad.

Relying on *United States v. Gray*, 669 F.3d 556, 566 (5th Cir.), *vacated and remanded on other grounds*, 133 S. Ct. 151 (2012), and *United States v. Cameron*, 538 F.2d 254, 259 (9th Cir. 1976), Mr. Eckert also argues that the search warrant affidavit was insufficiently particular regarding the means of conducting the search. In *Gray*, which involved a warrant authorizing a body-cavity search for drugs "in accordance with recognized accepted medical procedure," 669 F.3d at 560 (internal quotation marks omitted), the court "urge[d] warrant-issuing magistrates to cabin the search warrant more than the 'recognized medical procedure' language in this warrant," *id.* at 566. And in *Cameron*, in discussing the desirability of a search warrant for body-cavity searches, the Ninth Circuit noted that "[t]he warrant defines the scope of the search, so that the suspect will know what procedures he faces." 538 F.2d at 259.

But neither *Gray* nor *Cameron* necessarily would cause a reasonable official in Mr. Dougherty's position to recognize that the warrant was insufficiently particular for failing to describe any medical procedures. Because these decisions are not Supreme Court or Tenth Circuit cases, they are not controlling in this circuit, and Mr. Eckert has not identified any Supreme Court or Tenth Circuit authority requiring a description of authorized medical procedures. *Cf. Brooks*, 427 F.3d at 1252 (search warrant for computer "need not have included a search protocol to satisfy the particularity requirement of the Fourth Amendment"). Further, the portions of *Gray*

15

and *Cameron* that Mr. Eckert relies on are dicta, not holdings. *Gray* "urge[s]" a course of action, 669 F.3d at 566, and *Cameron* merely comments on a benefit of a warrant in circumstances that were not before the court, *see* 538 F.2d at 259.

For these reasons, a reasonable official in Mr. Dougherty's position could fail to perceive any problem with the warrant's specificity, entitling Mr. Dougherty to qualified immunity. *See Messerschmidt*, 132 S. Ct. at 1250; *Malley*, 475 U.S. at 341.

### B. Authorizing the Transfer

Mr. Eckert also argues that Mr. Dougherty violated his rights by participating in and enabling his unlawful arrest without probable cause when Mr. Dougherty authorized the officers to continue to detain him for transport to Gila Regional Medical Center. As discussed above, however, a reasonable official could believe that probable cause existed. The question then is whether, in light of the warrant's issuance, it would be obvious to any reasonable official that it would be clearly unlawful for officers to detain Mr. Eckert for a reasonable time to execute the warrant. Mr. Eckert has not cited any cases establishing this proposition, and our research has not located any. Mr. Eckert therefore has failed to show that the law was clearly established, *see Thomas*, 765 F.3d at 1194, and Mr. Dougherty is entitled to qualified immunity on this claim.

True, Mr. Eckert's detention extended beyond the period reasonably necessary to perform the constitutional portions of the search, when he was subjected to what we assume to have been unconstitutional procedures. But Mr. Dougherty cannot be liable for that extended detention because (1) Mr. Eckert conceded that he "does not

16

and cannot allege that Dougherty directed the officers to conduct an unlawful search," Aplt. App. at 112, and (2) as the district court held, it was not reasonably foreseeable to Mr. Dougherty that Mr. Eckert would be subjected to unconstitutional procedures (and the concomitant delay) after the initial negative test results.

## II.     Motion to Amend

Mr. Eckert also challenges the district court's refusal to allow him to amend his complaint. The district court held that the motion was unduly delayed and amendment would be futile. We review a denial of amendment for abuse of discretion, except that "[w]here the reason for denial of leave to amend is futility, we review de novo the legal basis for the finding of futility." *Jones v. Norton*, 809 F.3d 564, 579 (10th Cir. 2015), *petition for cert. filed* (U.S. July 13, 2016) (No. 16-72).

Under Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." But "[i]t is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993) (citations omitted); *see also State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984) ("Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."). Mr. Eckert filed his motion to amend almost 18 months after he filed his original complaint, and four months after the court granted the motion to dismiss while giving him leave to amend to assert that

17

Mr. Dougherty had directed the officers to conduct an illegal search. The amended complaint did not allege any new legal theories, but instead added detail about a conversation between Mr. Dougherty and the physician at the Deming Emergency Room, who allegedly told Mr. Dougherty that the planned search could result in further testing. Although the motion asserted that "Eckert was not aware of the details of the conversation between [the physician] and Dougherty prior to filing the complaint," Aplt. App. at 113, there was no explanation why the motion could not have been filed earlier. In fact, Mr. Eckert discussed the doctor's views in his response to Mr. Dougherty's motion to dismiss, a year before he filed the motion to amend. Given both the length of time between the original complaint and the motion to amend and Mr. Eckert's failure to explain why he should not have known the details of the conversation either at the time of filing or some time reasonably soon thereafter, the district court did not abuse its discretion in denying amendment on the ground of undue delay.

The district court also concluded that the proposed amendment was futile, another ground for denying amendment, *see Frank*, 3 F.3d at 1365. Mr. Eckert argues that "the additional facts alleged in [his] proposed amended complaint state that Dougherty was aware that the search authorized in the warrant may have led to the discovery of something incidental in the initial digital rectal exam that would result in a series of further, and possibly more invasive testing." Aplt. Br. at 53. But as the district court recognized, even in light of the conversation,

[i]t was not reasonably foreseeable . . . that police and physicians at the second hospital would administer a chest X-ray, three enemas, or a colonoscopy. Dougherty, a medical layman, neither knew nor should have known that his actions would lead to such severe consequences, and no jury could reasonably infer that he should have known.

Aplt. App. at 259.

## CONCLUSION

The district court's judgment is affirmed.

Entered for the Court


Harris L Hartz
Circuit Judge

19